# United States Court of Appeals
## For the First Circuit

No. 10-1872

DIALYSIS ACCESS CENTER, LLC; JUSTO GONZÁLEZ-TRÁPAGA;
AND HIS WIFE, NANCY ROIG-FLORES,

Plaintiffs, Appellants,

v.

RMS LIFELINE, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Gustavo A. Gelpí, U.S. District Judge]

Before

Torruella, Leval,[*] and Thompson,
Circuit Judges.

Juan Ramón Rivas-Rivera, for appellants.
José Luis González-Castañer, with whom Cristina B. Martínez-Guzmán and González Castañer & Morales Cordero, C.S.P. were on brief, for appellee.

March 30, 2011

---

[*] Of the Second Circuit, sitting by designation.

**TORRUELLA**, <u>Circuit Judge</u>.  In this appeal, appellants-plaintiffs Dialysis Access Center, LLC ("DAC"), Justo González-Trápaga ("González-Trápaga") and his wife, Nancy Roig-Flores ("Roig-Flores") (collectively, "Appellants") challenge the district court's judgment dismissing all of their claims against appellee-defendant RMS Lifeline, Inc. ("RMS") and ordering the parties to arbitrate their claims as per the rules of the American Health Lawyers Association ("AHLA").  Specifically, Appellants aver that the court and not an arbitrator should resolve their dispute with RMS over the validity of a certain management services agreement, which Appellants wish to have declared null because RMS allegedly committed fraud in the formation and performance of the contractual obligations set forth therein.

Appellants challenge both the scope and validity of their arbitration agreement with RMS.  After careful consideration, we conclude that Appellants' claims are encompassed within the parties' arbitration agreement and that the agreement is valid, pursuant to Section 2 of the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 2.  Accordingly, we affirm the district court's judgment dismissing this case and compelling arbitration.

# I.   Facts and Procedural History

Appellant DAC, whose president is appellant González-Trápaga,[1] is a limited liability company organized under the laws of Puerto Rico dedicated to providing vascular intervention and access services to dialysis and kidney failure patients. Appellee RMS is a corporation created under the laws of Delaware that engages in the management and operation of medical centers providing access services. On or about August 20, 2007, appellants DAC and González-Trápaga entered into a management services agreement (the "MSA") with appellee RMS for the development, building, management and operation of a vascular access center in Mayagüez, Puerto Rico.[2]

Section 13.3 of the MSA contained a choice-of-law provision establishing that the MSA "shall be construed in accordance with the internal substantive laws of the Commonwealth of Puerto Rico." In addition, Section 13.9 of the MSA set forth an arbitration clause (hereinafter, the "Arbitration Clause") providing, in relevant part, as follows:

> Dispute Resolution/Arbitration. Manager [RMS]
> and Medical Practice [DAC] shall use good

---

[1] Appellant González-Trápaga is a medical doctor specializing in nephrology and authorized to practice the profession in Puerto Rico.

[2] For purposes of deciding the arbitration question in this case, we rely upon the terms of the MSA and the facts in the district court record. See Granite Rock Co. v. Int'l Bhd. of Teamsters, 130 S. Ct. 2847, 2853 n.1 (2010).

> faith negotiation to resolve any dispute that may arise under this Agreement [the MSA]. In the event Manager [RMS] and Medical Practice [DAC] cannot reach agreement on any issue, such issue will be settled by binding arbitration in accordance with the rules of arbitration of the American Health Lawyers Association, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

The parties agree that the Arbitration Clause is subject to the provisions of the FAA, 9 U.S.C. § 1 et seq.

During the term of the MSA, several disputes arose between the parties regarding their obligations under the MSA. On March 3, 2010, RMS submitted said disputes to arbitration before the AHLA. Subsequently, on April 13, 2010, Appellants filed a complaint (the "Complaint") in the Court of First Instance of the Commonwealth of Puerto Rico requesting both compensation for damages and a declaration that the MSA was null, allegedly because RMS fraudulently induced Appellants to enter into the MSA and then further committed fraud while performing the obligations set forth therein.

On May 10, 2010, RMS filed a notice removing Appellants' action to the district court on the ground of diversity of citizenship. That same day, RMS filed a motion to dismiss and compel arbitration alleging that the Arbitration Clause covered appellants DAC and González-Trápaga's claims and that appellant Roig-Flores had failed to state a claim upon which relief could be granted (because of lack of contractual privity). Accordingly, RMS

-4-

requested that Roig-Flores' claims be dismissed, that court proceedings be stayed and that the court order the parties to arbitrate their claims.  In the alterative, RMS averred that appellant Roig-Flores' claims also arose under the MSA and should also be submitted to binding arbitration.  The district court gave Appellants until May 26, 2010 to oppose.  Appellants failed to comply with this deadline, allegedly because the district court clerk failed to notify them of the deadline.

On May 27, 2010, the district court issued an order granting RMS' unopposed motion and entered judgment "dismissing th[e] case" and ordering the parties to arbitrate their claims as per the rules of the AHLA.  On June 4, 2010, Appellants filed a motion to alter or amend judgment and an opposition to RMS' motion to dismiss and to compel arbitration (which included a request that the district court remand the case to state court).[3]  In addition, on June 28, 2010, Appellants filed a motion requesting that the district court stay the ongoing arbitration proceedings until the Court resolved the pending motions.

On June 29, 2010, the district court denied Appellants' motion to stay arbitration proceedings and their motion to alter or amend judgment.  Appellants timely filed a notice of appeal with regards to the district court's (1) judgment dismissing the case

---

[3]  On appeal, Appellants have not challenged the district court's denial of their request to remand to state court.  We limit our analysis accordingly and do not address this issue.

-5-

and compelling arbitration, (2) order denying Appellants' motion to alter or amend said judgment, and (3) order denying Appellants' motion to stay arbitration proceedings.

## II. __Appellate Jurisdiction__

As a preliminary matter, we begin by addressing RMS' argument that the district court's judgment compelling arbitration is not immediately appealable, and, consequently, that we do not have jurisdiction to hear an appeal of said judgment. RMS grounds this argument in the mistaken belief that the district court's judgment was an interlocutory decision that merely stayed the Court's proceedings. However, for the reasons stated below, we find that said judgment was a final decision immediately appealable before this court.

Although Section 16 of the FAA "limits the immediate appealability of most pro-arbitration interlocutory orders, it still permits appeals to be taken from 'a final decision with respect to an arbitration.'" Braintree Labs., Inc. v. Citigroup Global Mkts. Inc., 622 F.3d 36, 43 (1st Cir. 2010) (citing 9 U.S.C. § 16(a)(3)). "Whether an order compelling arbitration is interlocutory or final depends on whether the district court chooses to stay litigation pending arbitration or instead to dismiss the case entirely. If the district court stays litigation, parties wishing to challenge the case's arbitrability must normally wait until the arbitrator resolves the matter on the merits and the

district court enters a final judgment." Id. (citing Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 87 n.2 (2000)). However, "[i]f . . . the district court couples its order compelling arbitration not with a stay but with an outright dismissal, leaving nothing more for itself to do but execute the eventual judgment, then an appeal may be taken." Id. (citing Green Tree, 531 U.S. at 86-87). "Where one side is entitled to arbitration of a claim brought in court, in this circuit a district court can, in its discretion, choose to dismiss the law suit, if all claims asserted in the case are found arbitrable." Next Step Med. Co. v. Johnson & Johnson Int'l, 619 F.3d 67, 71 (1st Cir. 2010) (emphasis omitted) (citing Bercovitch v. Baldwin Sch., Inc., 133 F.3d 141, 156 & n.21 (1st Cir. 1998)). But see Lloyd v. HOVENSA, LLC, 369 F.3d 263, 268-269 (3d Cir. 2004).

RMS alleges that, because the district court did not reach the merits of Appellants' claims, its judgment should be considered an interlocutory decision staying the Court's proceedings pending arbitration. However, RMS fails to realize that the district court's judgment not only compelled arbitration, but also stated that the Court was "dismissing th[e] case." The district court had the discretion to do so upon finding that all claims before it were arbitrable. Thus, we construe the district court's judgment as "a final decision with respect to an

arbitration," which is immediately appealable under Section 16(a)(3) of the FAA.

On the other hand, we do not have jurisdiction to hear an appeal of the district court's June 29, 2010 order (denying Appellants' motion to stay arbitration proceedings), because the issue has become moot. See Cruz v. Farquharson, 252 F.3d 530, 533 (1st Cir. 2001) ("When a case is moot-that is, when the issues presented are no longer live or when the parties lack a legally cognizable interest in the outcome-a case or controversy ceases to exist, and dismissal of the action is compulsory."). The motion to stay, which was filed on June 28, 2010, noted that various motions were pending resolution by the district court and requested "a stay on the arbitration proceedings until final adjudication is entered regarding motions to alter and to remand to state court." Accordingly, the motion to stay became moot on June 29, 2010 when the district court entered its final decision on the motions to alter and to remand to state court.[4]  We, therefore, limit our review in this appeal to an analysis of the district court's judgment dismissing the case and compelling arbitration.

### III.  **Standard of Review**

"We review both the interpretation of arbitration agreements and orders compelling arbitration de novo." South Bay

---

[4]  Appellants have not alleged that an exception to the mootness doctrine applies in this case.

<u>Boston Mgmt., Inc.</u> v. <u>Unite Here, Local 26</u>, 587 F.3d 35, 42 (1st Cir. 2009).[5]

## IV. **Discussion**

The parties do not contest that it was proper for the district court to decide whether their underlying dispute -- regarding the validity of the MSA -- was arbitrable.[6] Rather, they

---

[5]   As previously stated, RMS' motion to dismiss and to compel arbitration was unopposed at the time that the district court entered its judgment compelling arbitration (i.e., May 27, 2010). Although Appellants were served with said motion on May 10, 2010 (by regular and electronic mail), they waited until June 4, 2010 to oppose it.  Nevertheless, in light of our conclusion in this appeal that the district court's judgment withstands a <u>de novo</u> review -- which we reach after careful consideration of Appellants' opposing arguments -- it is unnecessary for us to address, and we issue no opinion, as to whether Appellants' delay in opposing RMS' motion to compel arbitration should constitute a waiver of their right to object.  <u>See</u> Local Rule 7(b) of the United States District Court for the District of Puerto Rico ("Unless within fourteen (14) days after the service of a motion the opposing party files a written objection to the motion, incorporating a memorandum of law, the opposing party shall be deemed to have waived objection."); Fed. R. Civ. P. 6(a)(1) (establishing that the day of service is not included in calculating time, and every day is counted, including intermediate Saturdays, Sundays, and legal holidays);  Fed. R. Civ. P. 6(d) (establishing that where, as here, a party is served by regular or electronic mail, three days are added after the relevant period would otherwise expire).

[6]  In its motion to dismiss and compel arbitration, RMS argued that the Arbitration Clause encompassed all claims raised by Appellants in their Complaint and requested that the district court compel the parties to arbitrate said claims.  At no point did RMS request that the district court refer to arbitration the issue of <u>who</u> (primarily) should decide arbitrability of the parties' disputes. <u>Cf.</u> <u>First Options of Chicago, Inc.</u> v. <u>Kaplan</u>, 514 U.S. 938, 944-45 (1995) (noting that where the question is "'<u>who</u> (primarily) should decide arbitrability[,]' . . . the law reverses the presumption" in favor of arbitration and establishes a presumption that said question is for judicial determination unless there is clear and unmistakable evidence to the contrary); <u>Howsam</u> v. <u>Dean Witter</u>

disagree about whether the district court answered the question correctly. Thus, we must determine whether the district court erred in compelling the parties to arbitrate their claims. Namely, Appellants claim in their Complaint that the MSA is invalid and request both damages and a declaration that it is null, because RMS allegedly committed fraud during the MSA's formation and in the performance of the obligations set forth therein.

Appellants challenge the district court's judgment compelling arbitration on three main grounds. First, they challenge the Arbitration Clause's scope by alleging that the parties did not agree to arbitrate the validity of the MSA. Second, Appellants contend that, even if the parties agreed to arbitrate the validity of the MSA, arbitration is not proper in

Reynolds, Inc., 537 U.S. 79, 83, (2002) ("The question whether the parties have submitted a particular dispute to arbitration, i.e., the question of arbitrability, is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." (citation and internal quotation marks omitted)). Therefore, although the district court did not provide any reasoning behind its order granting RMS' unopposed motion to dismiss and to compel arbitration, we construe the same as a determination on the question of whether the parties' underlying fraud dispute was arbitrable and not a determination on the "rather arcane" question of who (primarily) should decide whether said dispute was arbitrable. First Options, 514 U.S. at 944-45. Neither party argues that an arbitrator, not a court, should resolve their current disagreement about whether their underlying fraud dispute is arbitrable. Accordingly, this appeal does not implicate the aforementioned reversed presumption applied by the Supreme Court in cases such as First Options. See Granite Rock Co. v. Int'l Bhd. of Teamsters, 130 S. Ct. 2847, 2857 n.5 (2010) (majority opinion); Granite Rock, 130 S. Ct. at 2866 n.1 (Sotomayor, J., concurring in part and dissenting in part).

this case because RMS allegedly did not comply with the Arbitration Clause's supposed requirement that good faith negotiations take place prior to arbitration.  Finally, Appellants maintain that, even if the parties agreed to arbitrate the validity of the MSA, the Arbitration Clause is not valid because the nullity of the MSA causes the clauses contained therein to also be null.[7]

RMS contends, on the other hand, that, because Appellants have not specifically challenged the validity of the Arbitration Clause but rather have only challenged the validity of the MSA in which the Arbitration Clause was included, the Supreme Court's holdings in Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395 (1967), and Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440 (2006), require that we compel arbitration regardless of whether the language of the Arbitration Clause encompasses a dispute over the validity of the MSA.  As further explained below, this argument misconstrues the Supreme Court's precedents and was rejected by the Court in Granite Rock Co. v. Int'l Bhd. of Teamsters. 130 S. Ct. 2847, 2858 (2010) (noting that the fact that Buckeye and some prior cases did not discuss the requirement -- that the arbitration agreement covers the dispute in question --

---

[7] We note that Appellants alleged at the district court level that RMS was not entitled to invoke the Arbitration Clause because its allegedly fraudulent conduct constituted a waiver of such right. Nevertheless, because Appellants did not raise this issue on appeal, it is deemed waived.  See United States v. Rodríguez Cortés, 949 F.2d 532, 542 (1st Cir. 1991).

-11-

merely reflects the fact that in those cases such requirement was "so obviously satisfied that no discussion was needed"). Nevertheless, RMS also alleges that, in any event, the Arbitration Clause is sufficiently broad to encompass Appellants' claims.

For the reasons stated below, we find that (1) the Arbitration Clause is sufficiently broad to encompass Appellants' claims, (2) the determination as to whether RMS complied with the Arbitration Clause's supposed "good faith negotiations" pre-condition to arbitration is an issue presumptively for the arbitrator to decide, and (3) given that Appellants have not specifically challenged the validity of the Arbitration Clause and have only challenged the validity of the MSA as a whole, the Arbitration Clause is severable from the MSA and considered valid, irrevocable, and enforceable under Section 2 of the FAA, 9 U.S.C. § 2, as interpreted by Prima Paint and its progeny. See, e.g., Rent-A-Center, West, Inc. v. Jackson, 130 S. Ct. 2772 (2010); Preston v. Ferrer, 552 U.S. 346 (2008); Buckeye, 546 U.S. at 447-49; Prima Paint, 388 U.S. at 406. Accordingly, we affirm the district court's judgment dismissing this case and compelling the parties to arbitrate their claims.

We begin our analysis with an overview of the relevant arbitration law.

## A. Arbitration Law

A party seeking to compel arbitration under the FAA must demonstrate "that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope." InterGen N.V. v. Grina, 344 F.3d 134, 142 (1st Cir. 2003).

Whether or not a dispute is arbitrable is typically a question for judicial determination. See Granite Rock, 130 S. Ct. at 2855 (citing Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002)). Therefore, "except where the parties clearly and unmistakably provide otherwise, it is the court's duty to interpret the agreement and to determine whether the parties intended to arbitrate grievances concerning a particular matter."[8] Granite Rock, 130 S. Ct at 2858 (internal citation and quotation marks omitted); see also First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944-45 (1995).

On the other hand, "'"procedural" questions which grow out of the dispute and bear on its final disposition' are presumptively not for the judge, but for an arbitrator, to decide." Howsam, 537 U.S. at 84 (quoting John Wiley & Sons, Inc. v.

---

[8] As discussed in footnote six of this opinion, the parties do not contest that it is the court who shall decide whether their underlying fraud dispute is arbitrable. Thus, the present appeal does not implicate the rule requiring clear and unmistakable evidence of an agreement to arbitrate arbitrability.

-13-

Livingston, 376 U.S. 543, 557 (1964)). In addition, it is also presumed under federal law "that the arbitrator should decide 'allegation[s] of waiver, delay, or a like defense to arbitrability.'" Id. (alteration in original) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)).

Whether or not the parties have agreed to submit a certain dispute to arbitration "depends on contract interpretation, which is a question of law." Combined Energies v. CCI, Inc., 514 F.3d 168, 171 (1st Cir. 2008) (citation and internal quotation marks omitted). "The FAA reflects the fundamental principle that arbitration is a matter of contract." Rent-A-Center, 130 S. Ct. at 2776. Therefore, the first principle that underscores all of the Supreme Court's arbitration decisions is that "[a]rbitration is strictly a matter of consent, and thus is a way to resolve those disputes -- but only those disputes -- that the parties have agreed to submit to arbitration." Granite Rock, 130 S. Ct. at 2857 (emphasis in original) (citations and internal quotation marks omitted). While applying this principle, the Supreme Court has stated that

> courts should order arbitration of a dispute
> only where the court is satisfied that neither
> the formation of the parties' arbitration
> agreement nor (absent a valid provision
> specifically committing such disputes to an
> arbitrator) its enforceability or
> applicability to the dispute is in issue.

-14-

> Where a party contests either or both matters,
> "the court" must resolve the disagreement.

Id. at 2857-2858 (emphasis in original) (citations and internal quotation marks omitted).

"When deciding whether the parties agreed to arbitrate a certain matter . . . , courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." First Options, 514 U.S. at 944. In carrying out this endeavor, "'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.'" Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 62 (1995) (quoting Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 476 (1989)). See also PowerShare, Inc. v. Syntel, Inc., 597 F.3d 10, 15 (1st Cir. 2010) (noting that "federal law undeniably includes a policy favoring arbitration" (citing Volt, 489 U.S. at 475-76)). As the Supreme Court recently clarified in Granite Rock, courts "discharge this duty by: (1) applying the presumption of arbitrability only where a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand; and (2) adhering to the presumption and ordering arbitration only where the presumption is not rebutted." 130 S. Ct. at 2858-59; see also IOM Corp. v. Brown Forman Corp., 627 F.3d 440, 450 (1st Cir. 2010) ("In evaluating the scope of . . . arbitration clauses, . . . arbitration will be ordered unless

-15-

it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." (citation and internal quotation marks omitted)).

Thus, where the court is persuaded that "the parties' arbitration agreement was validly formed and that it cover[s] the dispute in question and [is] legally enforceable," Granite Rock, 130 S. Ct. at 2858 (emphasis added), and that the arbitration agreement is not otherwise subject to revocation "upon such grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2, Section 2 of the FAA requires that the court submit the dispute in question to arbitration.

In Prima Paint, the Supreme Court addressed a situation where, although the respective arbitration clause clearly encompassed the dispute in question (i.e., whether a consulting agreement was void because of fraud in the inducement) and thus the scope of the arbitration clause was not at issue, a party nevertheless refused to enforce the arbitration clause on the ground that the nullity of the consulting agreement caused the arbitration clause included therein to also be null. Prima Paint, 388 U.S. at 398. The Court applied the FAA and concluded that, because the parties did not specifically challenge the validity of the arbitration clause itself (e.g., no claim was advanced that the arbitration clause itself was fraudulently induced), the arbitration clause was severable from the consulting agreement and

-16-

had to be enforced.  The Supreme Court has subsequently reaffirmed this severability requirement in various cases.  <u>See</u>, <u>e.g.</u>, <u>Rent-A-Center</u>, 130 S. Ct. at 2778, <u>Preston</u>, 552 U.S. at 353-54, <u>Buckeye</u>, 546 U.S. at 447-49.  More recently, the Court explained that these cases

> simply appl[y] the requirement in § 2 of the FAA that courts treat an arbitration clause as severable from the contract in which it appears and enforce it according to its terms unless the party resisting arbitration specifically challenges the enforceability of the arbitration clause itself, or claims that the agreement to arbitrate was [n]ever concluded.

<u>Granite Rock</u>, 130 S. Ct. at 2858 (second alternation in original) (citation and internal quotation marks omitted); <u>see also</u> <u>Buckeye</u>, 546 U.S. at 448 (noting that the question of whether or not the arbitration clause is severable does not depend on whether the challenge at issue would render the contract as a whole voidable or void).

### B.  Analysis

With the aforementioned legal framework in mind, we now analyze the issues at hand in the present appeal.  We divide our analysis into three sections.  First, we interpret the scope of the Arbitration Clause and determine whether Appellants' claims are encompassed therein.  Second, we discuss the arbitrability of the parties' dispute pertaining to whether RMS complied with the Arbitration Clause's purported "good faith negotiations" pre-

condition to arbitration. Third, we discuss whether the Arbitration Clause is severable from the MSA, pursuant to Section 2 of the FAA.

### 1. Interpretation of Arbitration Clause's Scope

The parties agree that the Arbitration Clause requires that they settle by binding arbitration "any dispute that may <u>arise under</u> [the MSA]."[9] (Emphasis added). Appellants allege that this language is insufficient to encompass a dispute over the validity of the MSA and that the parties never intended to arbitrate such a dispute. To this effect, they argue that the use of the language "arising under" (as opposed to, e.g., "arising under or relating to") presupposes a valid agreement. Thus, they contend that the parties did not agree to arbitrate their current dispute over the validity of the MSA.

In determining whether Appellants' claims fall within the scope of the Arbitration Clause, we focus on the factual allegations underlying their claims in the Complaint. <u>See</u> <u>Mitsubishi Motors Corp.</u> v. <u>Soler Chrysler-Plymouth Inc.</u>, 473 U.S. 614, 622 n.9 (1985); <u>see also</u> <u>Medtronic AVE, Inc.</u> v. <u>Advanced</u>

_____

[9] Under the first sentence of Section 13.9 of the MSA, the parties agreed to use negotiation to resolve any dispute "that may arise under [the MSA]." Then, in the following sentence, the parties set forth their agreement to submit to arbitration "any issue" upon which they cannot agree. The parties agree that these sentences should be interpreted jointly as setting forth their agreement to arbitrate "any dispute that may arise under the MSA." Therefore, we assume this interpretation for purposes of our analysis in this appeal.

<u>Cardiovascular Systems, Inc.</u>, 247 F.3d 44, 55 (3d Cir. 2001). In the Complaint, Appellants claimed, first, that RMS fraudulently induced them to enter into the MSA by intentionally misleading them with regards to the coverages and payment rates that insurance companies paid in Puerto Rico. Appellants further claimed that RMS also committed fraud during the performance of the MSA by, among other things, purposefully breaching its obligations to provide support to DAC in the negotiation of coverages with insurance companies. This latter claim (i.e., fraud in the performance of the MSA) easily falls within the scope of the Arbitration Clause's "arising under" language and does not warrant further discussion. Accordingly, we find that said claim is encompassed under the Arbitration Clause. On the other hand, the former claim (i.e., fraud in the inducement of the MSA) deserves further analysis.

Under Puerto Rico law, the "consent of the contracting parties" is one of the requisites for the existence of a contract. 31 P.R. Laws Ann. tit. 31, § 3391 (2008). Where consent is wholly lacking, as in a simulated contract, no contract is deemed to have existed. <u>See</u> <u>Lummus Co.</u> v. <u>Commonwealth Oil Refining Co.</u> 280 F.2d 915, 930 n.21 (1st Cir. 1960) (citing, <u>inter alia</u>, <u>Guzmán</u> v. <u>Guzmán</u>, 78 P.R.R. 640, 78 D.P.R. 673 (1955)). On the other hand, "if a contract contains the necessary effectuating requisites" (including the consent of the contracting parties), "although tainted with defect or vice, there is nonetheless a contract"

-19-

because the defect may be cured.  Id.  (citation and internal quotation marks omitted).  An example of a situation where a contract may exist despite being tainted with defect or vice is when fraud is committed during its formation.  See Colón v. Promo Motor Imports, Inc., 144 D.P.R. 659, 668 (1997) (official translation).[10]

Under Puerto Rico contract law, fraud is a type of contractual deceit ("dolo" or "dolus").  See Márquez v. Torres Campos, 11 P.R. Offic. Trans 1085, 111 D.P.R. 854, 863-64 (1982). Puerto Rico law distinguishes between contractual deceit occurring at the contracting stage (i.e., during the formation of the contract) and contractual deceit occurring in the course of the performance of the contract.  See Colón, 144 D.P.R. at 668 (citing Canales v. Pan American, 12 P.R. Offic. Trans. 411, 425, 112 D.P.R. 329, 340 (1982); Márquez, 11 P.R. Offic. Trans. at 1098, 111 D.P.R. at 864).  Contractual deceit that occurs during the formation of the contract, if deemed serious, may give rise to the nullification of the contract.  Id.  In this case, "although the executed contract may not be deemed nonexistent, it is voidable, and the period of limitations for bringing an action for annulment is four years."  Id.; see also 31 P.R. Laws Ann. tit. 31, § 3512 (2008). On the other hand, "contractual deceit that arises not at the

---

[10]  The Puerto Rico Supreme Court provided an official translation of an excerpt of its opinion in Colón.

-20-

contracting stage, but in the course of the performance of the contract," does not give rise to the nullification of the contract. Colón, 144 D.P.R. at 668; see also Márquez, 11 P.R. Offic. Trans 1085, 111 D.P.R. at 863-64. Rather, "in such cases, the person who engages in deceit shall be liable for the damage knowingly caused by his or her nonfulfillment." Colón, 144 D.P.R. at 668; see also 31 P.R. Laws Ann. tit. 31, §§ 3018, 3019 and 3024 (2008).

After unpacking Appellants' allegations in the Complaint and construing them in light of the applicable law, their story becomes clear. Appellants factually allege that, although the MSA exists, it is voidable and should be annulled, because RMS allegedly committed fraud during its formation. Our task here is not to resolve this dispute, but rather to determine whether it is arbitrable under the Arbitration Clause. See Municipality of San Juan v. Corporación Para El Fomento Económico De La Ciudad Capital, 415 F.3d 145, 149 (1st Cir. 2005) (citing AT&T Techs., Inc. v. Commc'ns Workers of America, 475 U.S. 643, 649 (1986)).

As previously stated, the parties do not contest that the Arbitration Clause is construed with reference to Puerto Rico law and is subject to the FAA.[11] Therefore, in construing the Arbitration Clause, we are guided by the following principles. If

---

[11] We take note of the fact that the definition of the term "commerce" in the FAA includes "commerce . . . in any Territory of the United States," which encompasses the subject matter of the parties' current dispute. 9 U.S.C. § 1 (emphasis added).

-21-

"the terms of [the Arbitration Clause], its conditions and exclusions, are clear and specific, and leave no room for ambiguity or for diverse interpretations, they should be thus applied." Unisys Puerto Rico, Inc. v. Ramallo Bros. Printing, Inc., 1991 WL 735351 (P.R.), 128 D.P.R. 842, 852 (1991) (citing 31 P.R. Laws Ann. tit. 31, § 3471). "If the words should appear contrary to the evident intention of the contracting parties, the intention shall prevail." 31 P.R. Laws Ann. tit. 31, § 3471 (2008). Furthermore, consistent with the federal pro-arbitration policy, there is a presumption that "'ambiguities as to the scope of the arbitration clause itself [must be] resolved in favor of arbitration.'" Powershare, 597 F.3d at 15 (alteration in original) (quoting Volt, 489 U.S. at 475-76). We apply this presumption in favor of arbitrability only if the Arbitration Clause "is ambiguous about whether it covers the dispute at hand; . . . adhering to the presumption . . . only where the presumption is not rebutted." Granite Rock, 130 S. Ct. at 2858-59.

Applying the aforementioned principles, we find that the terms of the Arbitration Clause are not clear or specific and leave room for reasonable diverse interpretations on the issue of whether the parties agreed to arbitrate Appellants' fraudulent inducement claim and the resulting dispute over the validity of the MSA. Thus, we find that the Arbitration Clause is ambiguous on this issue. Nevertheless, as discussed below, the strong federal pro-

arbitration policy establishes a presumption (which Appellants fail to rebut) that the Arbitration Clause's "arising under" language is sufficiently broad to encompass Appellants' claims.

In Prima Paint, the Supreme Court found that the language of the arbitration clause there at issue, which required arbitration of controversies "arising out of or relating to" a certain consulting agreement, was "easily broad enough to encompass Prima Paint's claim" that the consulting agreement was procured by fraud. Prima Paint, 388 U.S. at 406. Appellants attempt to distinguish Prima Paint by arguing that the absence of the words "relating to" from their Arbitration Clause should compel a different result.

The federal courts of appeal have wrestled with the interpretation of arbitration clauses similar to the one here in question and have reached different results on the issue of whether they encompass disputes pertaining to the validity of a contract of which the respective arbitration clause forms a part. In an early case, In re Kinoshita & Co., 287 F.2d 951, 953 (2d Cir. 1961), the Second Circuit found that when an arbitration clause "refers to disputes or controversies 'under' or 'arising out of' the contract," arbitration is restricted to "disputes and controversies relating to the interpretation of the contract and matters of performance." The Court reasoned that the phrase "arising under" is narrower in scope than the phrase "arising out of or relating

-23-

to," the standard language recommended by the American Arbitration Association. Id. Accordingly, the Court concluded that the arbitration clause was not "sufficiently broad to encompass a dispute or controversy about an alleged fraudulent inducement of the contract" in which the arbitration clause was included. Id. In Mediterranean Enterprises Inc. v. Ssangyong Corp., 708 F.2d 1458, 1464 (9th Cir. 1983), the Ninth Circuit explained that "arising hereunder" was synonymous with "arising under" and, relying on Kinoshita, found that the language "'arising hereunder' is intended to cover . . . only [disputes] relating to the interpretation and performance of the contract itself." The Ninth Circuit has subsequently reaffirmed this narrow construction of the "arising under" language. See Tracer Research Corp. v. Nat'l Envtl. Servs. Co., 42 F.3d 1292, 1294-95 (9th Cir. 1994).

On the other hand, the Second Circuit has subsequently changed course and, although not formally overruling Kinoshita, has severely confined its holding to "its precise facts," noting that Kinoshita is inconsistent with the federal policy favoring arbitration.[12] See ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co., 307 F.3d 24, 33 (2d Cir. 2002) ("As a result [of

---

[12] We note, however, that the court in Kinoshita was not presented with and did not explicitly rule on the question Granite Rock instructs us to consider: whether the language of the arbitration agreement is at least "ambiguous as to whether it covers the dispute at hand," such that the rebuttable federal presumption in favor of arbitrability is triggered. 130 S. Ct. at 2858-59.

later Second Circuit cases], the authority of <u>Kinoshita</u> is highly questionable in [the Second] Circuit." (first alteration in original) (citation and internal quotation marks omitted)); <u>Louis Dreyfus Negoce S.A.</u> v. <u>Blystad Shipping & Trading Inc.</u>, 252 F.3d 218, 225-26 (2d Cir. 2001) ("In <u>In re Kinoshita & Co.</u>, . . . we intimated that the use of the phrase 'arising under' an agreement, in an arbitration clause, indicated that the parties intended the clause be narrowly applied.  We have, however, since limited this holding to its facts, declaring that absent further limitation, only the precise language in <u>Kinoshita</u> would evince a narrow clause."); <u>Genesco, Inc.</u> v. <u>T. Kakiuchi & Co., Ltd.</u>, 815 F.2d 840, 854 n.6 (2d Cir. 1987) ("[W]e recognize, as did Samitri, that Kinoshita is inconsistent with the federal policy favoring arbitration . . . ."); <u>S.A. Mineracao Da Trindade-Samitri</u> v. <u>Utah Int'l, Inc.</u>, 745 F.2d 190, 194 (2d Cir. 1984) ("We decline to overrule <u>In re Kinoshita</u>, despite its inconsistency with federal policy favoring arbitration, particularly in international business disputes, because we are concerned that contracting parties may have (in theory at least) relied on that case in their formulation of an arbitration provision.").

Accordingly, in these later cases, the Second Circuit found that language similar (but not identical) to the language in <u>Kinoshita</u> was sufficiently broad to encompass fraudulent inducement claims.  <u>See</u>, <u>e.g.</u>, <u>ACE Capital</u>, 307 F.3d at 31-34 (noting that the

-25-

language "any right of action hereunder" was, at least when paired with other more expansive language in the arbitration agreement, broad enough to include a contractual fraudulent inducement claim); Genesco, Inc., 815 F.2d at 854 (noting that the language "all claims . . . of whatever nature arising under this contract" was sufficiently broad to encompass a claim of fraud in the inducement); S.A. Mineracao Da Trindade-Samitri, 745 F.2d at 194-195 (noting that the language "any question or dispute aris[ing] or occur[ring] under" the agreement was sufficiently broad to cover fraudulent inducement claim).

Other circuits have declined to follow Kinoshita because of the strong federal policy in favor of arbitration. See, e.g., Battaglia v. McKendry, 233 F.3d 720, 727 (3d Cir. 2000) ("[W]hen phrases such as 'arising under' and 'arising out of' appear in arbitration provisions, they are normally given broad construction, and are generally construed to encompass claims going to the formation of the underlying agreements."); Gregory v. Electro-Mech. Corp., 83 F.3d 382, 386 (11th Cir. 1996) (arbitration clause covering "any dispute . . . which may arise hereunder" was sufficiently broad to encompass a fraudulent inducement claim); see also Highlands Wellmont Health Network v. John Deere Health Plan, 350 F.3d 568, 578 (6th Cir. 2003) (holding "that 'arising out of' is broad enough to include a claim of fraudulent inducement of a contract"); Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l,

<u>Ltd.</u>, 1 F.3d 639, 642 (7th Cir. 1993) (noting that "arising out of" covers all disputes "having their origin or genesis in the contract, whether or not they implicate interpretation or performance of the contract per se"); <u>Mar-Len of Louisiana, Inc.</u> v. <u>Parsons-Gilbane</u>, 773 F.2d 633, 637 (5th Cir. 1985) (recognizing that <u>Kinoshita</u> is inconsistent with federal policy favoring arbitration). The case law that we have examined suggests that the Ninth Circuit is the only federal circuit that continues to strictly adhere to the analysis in <u>Kinoshita</u>.

We agree with the majority of the federal circuits and find that the analysis in <u>Kinoshita</u> is not consistent with the strong federal pro-arbitration policy set forth by the FAA. Said policy establishes a presumption in favor of arbitrability where, as here, a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand.[13] <u>See</u> <u>Granite Rock</u>, 130 S. Ct. at 2858-59. The presumption requires that such ambiguities be resolved in favor of arbitration. <u>Mastrobuono</u>, 514 U.S. at 62.

As we have stated, in the present case the Arbitration Clause is ambiguous about whether it covers Appellants' fraudulent

---

[13]  As discussed in section "IV(B)(3)" of this opinion, Appellants do not allege that their arbitration agreement with RMS -- which was set forth in the Arbitration Clause -- was fraudulently induced or otherwise invalid or unenforceable. Therefore, pursuant to Section 2 of the FAA, the Arbitration Clause is severable from the MSA and considered to be validly formed and enforceable.

inducement claim and the resulting dispute over the validity of the MSA. Moreover, we find that it cannot be said with positive assurance that the "arising under" language used in the Arbitration Clause is not sufficient to encompass the current dispute over the validity of the MSA (as opposed to a dispute over the existence of the MSA). See AT&T Techs., 475 U.S. at 650; IOM Corp., 627 F.3d at 450. Appellants have not rebutted the presumption in favor of arbitrability.[14] See Granite Rock, 130 S. Ct. at 2858-59. Accordingly, we conclude that Appellants' fraudulent inducement claim and the resulting dispute over the validity of the MSA are encompassed within the scope of the Arbitration Clause.

Furthermore, we note that the present case is materially distinguishable from Granite Rock, where the Supreme Court analyzed the scope of an arbitration clause with language similar to the one here in question. In Granite Rock, the Supreme Court analyzed whether an arbitration clause requiring that the parties submit to arbitration "[a]ll disputes arising under th[e] [collective

---

[14] Appellants cite Puerto Rico contract law in support of their proposition that, because RMS drafted the Arbitration Clause, ambiguities should be interpreted against RMS. See 31 P.R. Laws Ann. tit. 31, § 3478 (2008). However, this argument fails. Assuming arguendo that said state law tenet requires a result different from the one at which we arrive today, we find that the strong federal policy in favor of arbitration trumps the tenet. See Kristian v. Comcast Corp., 446 F.3d 25, 35 (1st Cir. 2006) ("Where the federal policy favoring arbitration is in tension with the tenet of contra proferentem for adhesion contracts, and there is a scope question at issue, the federal policy favoring arbitration trumps the state contract law tenet.").

-28-

bargaining agreement (CBA)]" was sufficiently broad to encompass a dispute over the ratification date of said CBA. Granite Rock, 130 S. Ct. at 2862 (emphasis in original). The Court noted that, because the CBA's arbitration clause pertained only to disputes "arising under" the CBA, the arbitration clause "presuppose[d] the CBA's existence." Granite Rock, 130 S. Ct. at 2860-61. The Court then found as follows: "[W]e do not think the question whether the CBA was validly ratified on July 2, 2004 - a question that concerns the CBA's very existence - can fairly be said to 'arise under' the CBA." Id. at 2862 (emphasis added). The Court concluded that the dispute there at issue fell "outside the scope of the parties' arbitration clause on grounds the presumption favoring arbitration [could not] cure." Id. Thus, although the Court recognized the presumption favoring arbitration, it ultimately determined that the specific language of the arbitration clause there at issue (i.e., "arising under") could not be fairly construed as encompassing a dispute over the existence of the CBA.

It is evident from the aforementioned discussion of Appellants' factual allegations that, contrary to the situation in Granite Rock, the parties here do not dispute the MSA's existence. Rather, they dispute the validity of the MSA, which Appellants challenge as voidable in light of their allegations that it was fraudulently induced. Specifically, the parties dispute whether Appellants have the right to request that the MSA be annulled, not

whether the MSA currently exists. Therefore, the Supreme Court's finding in Granite Rock (i.e., that a question concerning the very existence of the CBA cannot fairly be said to "arise under" the CBA) does not counsel a result different from the one at which we here arrive. As we have stated, we find that the Arbitration Clause is ambiguous as to whether it encompasses the parties' dispute over the validity of the MSA. Appellants have not rebutted the presumption favoring arbitration of this dispute.

For the reasons stated, we find that the Arbitration Clause's scope is sufficiently broad to encompass Appellants' claims and the resulting dispute over the validity of the MSA.[15]

### 2. Arbitrability of Pre-condition to Arbitration

Appellants also allege that the parties' dispute over the validity of the MSA cannot be submitted to Arbitration because RMS did not comply with the Arbitration Clause's supposed pre-condition that the parties engage in good faith negotiations prior to arbitration. Furthermore, Appellants allege that the parties did not agree to submit to an arbitrator their disagreement over whether said pre-condition to arbitration was fulfilled.

---

[15] Appellants also alleged at the district court level that appellant Roig-Flores' claims were not arbitrable because her claims against RMS were ex contractu and, therefore, not covered by the Arbitration Clause. Nevertheless, because Appellants did not raise this issue on appeal, it is deemed waived. See United States v. Rodríguez Cortés, 949 F.2d 532, 542 (1st Cir. 1991).

The parties disagree over whether the Arbitration Clause in fact establishes a condition precedent to arbitration requiring that the parties engage in good faith negotiations. Nevertheless, we do not have to resolve this disagreement because, assuming arguendo that the Arbitration Clause establishes such a pre-condition to arbitration, Appellants have not rebutted the presumption that the arbitrator should decide whether the parties complied with such a procedural pre-requisite to arbitration. See Howsam, 537 U.S. at 84; John Wiley & Sons, Inc., 376 U.S. at 557-59 (holding that an arbitrator should decide whether the first steps of a grievance procedure were completed, where these steps are pre-requisites to arbitration).

Accordingly, we find that the parties' disagreement over whether RMS complied with the MSA's alleged good faith negotiations pre-requisite to arbitration is an issue for the arbitrator to resolve in this case.

### 3. Validity of the Arbitration Clause

Appellants contend that their allegation that RMS did not comply with the MSA's purported "good faith negotiations" pre-condition to arbitration is a specific attack on the Arbitration Clause that should preclude the application of the severability requirement set forth in Section 2 of the FAA. However, this argument fails, since it misconstrues the type of specific challenge to an arbitration clause necessary to preclude the

application of Section 2 of the FAA. As discussed in the preceding section, the parties' dispute over compliance with the MSA's alleged "good faith negotiations" pre-condition to arbitration is for the arbitrator to resolve in this case. Furthermore, this challenge does not question the validity or enforceability of the Arbitration Clause, but rather merely questions the clause's application (i.e., whether the clause requires arbitration in this case). Appellants cannot rely on this challenge to preclude the application of Section 2's severability requirement. See Granite Rock, 130 S. Ct. at 2858.

Although Appellants have challenged the validity of the MSA as a whole, they have not specifically challenged the validity of the Arbitration Clause itself. For example, Appellants have not alleged that the Arbitration Clause itself was fraudulently induced. Therefore, under Prima Paint and its progeny, the Arbitration Clause is severable from the MSA and must be enforced in accordance with its terms, pursuant to Section 2 of the FAA. Id.

## V.  Conclusion

For the reasons stated, we conclude that Appellants' claims in the Complaint are arbitrable under the Arbitration Clause, which is severable from the MSA and must be enforced pursuant to Section 2 of the FAA. We, therefore, affirm the

district court's judgment dismissing this case and compelling the parties to arbitrate their claims as per the rules of the AHLA.

**<u>Affirmed</u>**.