TORRUELLA, Circuit Judge
(Dissenting).
The panel majority acknowledges that Gove’s application for employment at CSD contained a valid agreement to arbitrate. Nonetheless, it concludes that Gove is not required to take her claims to arbitration because principles of Maine contract law— specifically, the Maine Law Court’s fealty to the tenet of contra proferentem[5] for adhesion contracts — require us to interpret any ambiguity in the scope of the agreement against the drafter (here, CSD). This it reasons, despite the otherwise broad federal principle that doubts about an arbitration clause’s scope should be resolved in favor of arbitrability. See Maj. Op. at 5 n. 2 (citing Dialysis Access Ctr., LLC v. RMS Lifeline, Inc., 638 F.3d 367, 376 (1st Cir.2011)). My colleagues’ conclusion is premised on their understanding that CSD effectively waived any arguments based on the federal policy favoring arbitration by limiting its discussion on appeal to questions of contract interpretation under Maine law. Because I do not agree that any such waiver occurred in this case, and because I believe precedent requires us to decide the issue before us in favor of arbitrability, I respectfully dissent.
To begin with, the majority’s application of the contra proferentem principle to resolve ambiguities regarding the scope of the arbitration clause against arbitrability is antithetical to a previous holding of this court that is directly on point. In Kristian v. Comcast Corp., 446 F.3d 25 (1st Cir. 2006), we reversed an analogous ruling by the U.S. District Court for the District of Massachusetts denying a motion to compel arbitration because, in doing so, the lower court had “incorrectly relied on the [Massachusetts] contract principle requiring contracts of adhesion to be construed strictly against the drafter,” id. at 35. We reasoned that, because the plaintiffs were “in fact raising a scope question,” i.e., the “[plaintiffs argue[d] that their antitrust claims d[id] not fall within the scope of the arbitration agreements as a result of nonretroactivity,” the general rule applying a “presumption in favor of arbitration” governed. Id. Accordingly, we unequivocally held that “[w]here the federal policy favoring arbitration is in tension with the tenet of contra proferentem for adhesion contracts, and there is a scope question at issue, the federal policy favoring arbitration trumps the state contract law tenet.” Id. (second emphasis added). The Kristian panel noted that “[t]his result makes sense because, once the dispute is in arbitration, the tenet of contra proferentem *9 can still be applied by the arbitrator on non-scope issues.” Id. at 35 n. 7.
Thus, while I fully agree with the majority’s threshold conclusion in this case, that we are considering here “a dispute concerning the scope of the arbitration clause, not its validity,” Maj. Op. at 5, given our holding in Kristian, I do not consider it sufficient here to resort to the doctrine of waiver in order to avoid taking into account “the interaction of the federal policy favoring arbitration with Maine contract law,” Maj. Op. at 6. Indeed, Kristian appears to require the opposite outcome than my colleagues in the majority reach in this case. See United States v. Guzman, 419 F.3d 27, 31 (1st Cir.2005) (“In a multi-panel circuit, ... newly constituted panels ordinarily are constrained by prior panel decisions directly (or even closely) on point.”).
As to the issue of waiver, the record shows that CSD presented its motion to compel arbitration pursuant to the Federal Arbitration Act (“FAA”), 9 U.S.C. §§ 1-16, and neither party contests that the arbitration clause at issue is subject to the provisions of the FAA. See Preston v. Ferrer, 552 U.S. 346, 349, 128 S.Ct. 978, 169 L.Ed.2d 917 (2008) (noting that FAA “establishes a national policy favoring arbitration when the parties [so] contract” and that “it calls for the application, in state as well as federal courts, of federal substantive law regarding arbitration”). Further, as the majority acknowledges, CSD emphasized the federal policy favoring arbitration to the court below, citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), for the proposition that “any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration,” id. at 626, 105 S.Ct. 3346 (quoting Moses H. Cone Mem’l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). It was upon Gove’s opposition to CSD’s motion to compel that the emphasis below turned to the tenet of contra proferentem for adhesion contracts, which under Maine law must be applied in the context of arbitration agreements to resolve ambiguities in contractual language against the drafter. See Barrett v. McDonald Invs., Inc., 870 A.2d 146, ISO-51 (Me.2005) (acknowledging Maine Law Court’s “retreat from [its] previously broad presumption in favor of arbitration” and holding that ambiguous arbitration clauses will be interpreted against drafters). The district court then followed the Maine Law Court’s preference for the contractual doctrine in ruling against the existence in this case of a valid agreement to arbitrate. See Gove v. Career Sys. Dev. Corp., 824 F.Supp.2d 205, 210-11 (D.Me. 2011).
Given how this case evolved below, it was appropriate for CSD to devote a considerable portion of its initial brief on appeal to refuting the district court’s premise that there was any ambiguity in the arbitration clause to begin with,[6] and to highlighting other Maine case law that might *10 persuade this court to follow a different route on appeal. Moreover, I acknowledge that CSD did not specifically rely on Kristian to support its argument in favor of arbitration in the scope analysis. However, it is evident from reading the parties’ briefs on appeal, including CSD’s reply to Gove’s appellee brief, that CSD took steps sufficient to bring the federal policy concern to this court’s attention and, hence, bring our controlling precedent to bear on the case.
To that end, in its initial briefing, CSD discussed our circuit’s case law regarding the appropriate legal standard for analyzing a motion to compel arbitration. It cited to Combined Energies v. CCI, Inc., 514 F.3d 168 (1st Cir.2008), in which we set forth our three-pronged approach for assessing motions to compel arbitration, consisting of a determination whether (1) there exists a valid agreement to arbitrate, (2) the dispute falls within the scope of that agreement, and (3) the right to arbitration was or was not waived by the movant. Id. at 171. CSD posited that only the first and second prongs of the analysis were at issue here, and that the plain language of Gove’s employment application satisfied both prongs. Importantly, CSD argued that “the determination of the existence of a valid agreement to arbitrate is analytically distinct from the scope of such [an] agreement ].” CSD then emphasized that in determining “the existence of a valid agreement to arbitrate, the courts look to state contract law,” and quoted language from Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino, 640 F.3d 471 (1st Cir.2011), to that effect. Id. at 475 (indicating that “principles of state contract law control the determination of whether a valid agreement to arbitrate exists”) (quoting Campbell v. Gen. Dyn. Gov’t Sys. Corp., 407 F.3d 546, 552 (1st Cir.2005)). CSD then moved into its discussion of Maine contract law to support its contention that the clear language of the agreement required arbitration.
Notably, after concluding its discussion of why, under the first prong of the analysis, there existed a valid agreement to arbitrate, CSD made a separate case for why Gove’s dispute with CSD falls within the scope of that agreement. That discussion included an excerpt from Dialysis Access Center, LLC v. RMS Lifeline, Inc., 638 F.3d 367 (1st Cir.2011), which indicated, in relevant part, that “[w]hen deciding whether the parties agreed to arbitrate a certain matter ..., courts generally ... should apply ordinary state-law principles that govern the formation of contracts,” but “[i]n carrying out this endeavor, due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.” Id. at 376 (internal citations and quotation marks omitted) (emphasis added).
Certainly, as the majority points out, the discussion that followed this reference relied on Maine case law and focused on why state contract principles required interpreting the arbitration clause broadly. However, CSD subsequently used its reply brief to flesh-out the idea that it had already introduced, i.e., that under our case law arbitrability should be favored in the scope analysis.[7] Specifically, CSD quoted *11 from Paul Revere Variable Annuity Insurance Co. v. Kirschhofer, 226 F.3d 15 (1st Cir.2000), where we indicated that “generally speaking, the presumption in favor of arbitration applies to the resolution of scope questions.” Id. at 25.
It is significant that CSD relied on Paul Revere because that case dealt with issues analogous to the ones currently sub judice, and it also formed the basis for this court’s holding in Kristian. In Paul Revere, the district court had applied the same contractual doctrine relied upon here (the tenet of contra proferentem for adhesion contracts) to conclude that an asserted ambiguity in the arbitration clause at issue should be interpreted against the drafters. Id. The parties whose motion for arbitration had been denied below argued on appeal that the court was required to resolve any doubts in favor of arbitration. Id. The Paul Revere panel held that, because the alleged ambiguity went to the arbitration agreement’s existence, rather than its scope, “[t]he federal preference for arbitration [did] not come into play and, a fortiori, it [could not] undermine the lower court’s reliance on the contra proferentem tenet.” Id. An essential component to our holding in that case was the finding that the question of ambiguity presented went to the validity of the agreement to arbitrate, not its scope. See id. (determining question whether a party has standing to compel arbitration concerned “[the] right to arbitrate at all” and was, therefore, “not a scope question”). Paul Revere clarified that, in contrast, “[a] scope question arises Vhen the parties have a contract that provides for arbitration of some issues’ and it is unclear whether a specific dispute falls within that contract.” Id. (quoting First Options v. Kaplan, 514 U.S. 938, 945, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)).
Although CSD did not discuss the Paul Revere holding in detail in its brief, it did refer us to First Sealord Surety, Inc. v. TLT Construction Corp., 765 F.Supp.2d 66 (D.Mass.2010). There, the U.S. District Court for the District of Massachusetts briefly discusses the case’s holding. The summary provided in First Sealord, which CSD quoted in its brief, noted the “distinction” that our circuit has drawn in this area, describing it as follows: “[cjontra pr[o]ferentem applies to questions such as whether a ‘party has entered an arbitration agreement or whether an arbitration agreement is enforceable vel non,’ but the presumption in favor of arbitration applies to the resolution-of-scope questions.” Id. at 75 n. 61 (quoting Paul Revere, 226 F.3d at 25) (third emphasis added).
On this basis, CSD adequately brought before this court the issue of whether or not the federal policy favoring arbitration should be applied in the scope analysis to favor arbitrability, vis-a-vis the tenet of contra proferentem for adhesion contracts. I find sufficient that CSD highlighted the distinction drawn in our case law between the court’s analysis of an arbitration agreement’s validity as opposed to its scope. Despite the majority’s refusal to engage with it, this distinction was key to the Kristian holding that now binds us, and generally to our preceding case law on how to interpret ambiguities in arbitration clauses. See Kristian, 446 F.3d at 35 (ap *12 plying “the general rule cited in Paul Revere” that “the presumption in favor of arbitration applies to the resolution of scope questions”) (quoting Paul Revere, 226 F.3d at 25). It is therefore decisive to the question presented to us on appeal and may be deemed “fairly included” therein. See, e.g., Jones v. United States, 527 U.S. 373, 397 n. 12, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999) (refusing to consider waived an argument not raised in opposition to a petition for writ of certiorari, despite specific rule of the Court allowing finding of waiver, where argument “was ‘predicate to an intelligent resolution of the question presented’ ” and indicating that “[i]n those instances, [the Court has] treated the issue not raised in opposition as fairly included within the question presented”) (quoting Ohio v. Robinette, 519 U.S. 33, 38, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996)).
In sum, because all judges on this panel conclude that Gove accepted and entered into a valid agreement to arbitrate some of the disputes between herself and CSD, our precedent is clear that Maine contract law cannot trump the federal policy favoring arbitration in our assessment of CSD’s motion to compel. See Kristian, 446 F.3d at 35. Nor should we resort here to the doctrine of waiver and avoid the obvious tension between our own case law and the Maine Law Court’s jurisprudence on the applicability of the contra proferentem tenet in this context. For these reasons, I dissent.

. The contract principle of contra proferentem is a Latin term meaning "against the offeror” and stands for "[t]he doctrine that, in interpreting documents, ambiguities are to be construed unfavorably to the drafter.” Black’s Law Dictionary 377 (9th ed. 2009).

. I take issue with the majority's suggestion that because CSD indicated at one point in its briefing that "there [was] no need to resort to the various rules of construction when the plain language of the agreement is unambiguous,” it necessarily waived any argument based on the federal policy. See Maj. Op. at 6. It is acceptable for parties to make arguments in the alternative, see, e.g., Fed.R.Civ.P. 8(d)(2) (indicating that pleadings containing alternative statements of a claim or defense “[are] sufficient if any one [of the alternative statements] is sufficient”), and it was sensible in this case for CSD to make its initial line of attack an argument against the ambiguity of the arbitration clause. I do not interpret CSD’s discussion in this regard as relinquishing the position that any potential ambiguities found by this court should be interpreted in favor of arbitration.

. CSD elaborated this point in its reply brief because it understood the argument in Gove's appellee brief as “conflating the two issues,” that is, (1) whether there exists a valid agreement to arbitrate and (2) whether the scope of any such agreement covers the dispute at hand. CSD indicated that this resulted in Gove's “ignor[ing] (or perhaps attempt[ing] to avoid) the analytical distinction between the two analys[es].” It was appropriate for CSD to use its reply brief to clarify that distinction, the relevance of which I will discuss infra. *11 See United States v. Bradstreet, 207 F.3d 76, 80 n. 1 (1st Cir.2000) ("While a reply brief is not the proper place to raise new arguments, it is proper for a court to look there for clarification.”) (internal citations omitted); see, e.g., Soto v. State Indus. Prods., Inc., 642 F.3d 67, 70 n. 1 (1st Cir.2011) (accepting arguments in the appellant’s reply brief for purpose of clarifying appellant's position); Provencher v. CVS Pharmacy, 145 F.3d 5, 8 n. 2 (1st Cir.1998) (same).