Elizabeth **SANCHEZ–SANTIAGO,**
**Plaintiff**

v.

**GUESS, INC., Defendant.**

**Civil No. 06–1887(SEC).**

United States District Court,
D. Puerto Rico.

Sept. 28, 2007.

Manuel Porro–Vizcarra, Manuel Porro Vizcarra Law Office, Yesenia M. Varela–Colon, Manuel Porro Vizcarra Law Office, Guaynabo, PR, for Plaintiff.

Frances R. Colon–Rivera, Francisco M. Viejo–Lopez, Saldana & Carvajal, P.S.C., San Juan, PR, for Defendant.

## OPINION AND ORDER

SALVADOR E. CASELLAS, Senior District Judge.

Pending before the Court is Defendant's Motion to Compel Arbitration (Docket # 10). Plaintiff opposed such motion (Docket # 13), Defendant replied (Docket

# 17), and Plaintiff sur-replied (Docket # 21). After considering the parties' filings and the applicable law, for the reasons set forth below, Defendant's motion will be **GRANTED in part, DENIED in part.**

## Background

Plaintiff was an employee at the Guess? store in Canóvanas, Puerto Rico, from October 26, 2004 until her dismissal on March 21,2005. *See,* Docket # 3 ¶¶ 7, 40. During the course of her employment, Plaintiff became pregnant and had medical complications arising therefrom. *See generally, Id.* at ¶¶ 10–38. Because they are not relevant for the purpose of this particular motion, we eschew a more detailed account of Plaintiff's employment and the factual underpinnings of her claims. At this point, suffice it to say that after her termination, Plaintiff filed the instant complaint against Defendant claiming, *inter alia,* discrimination on the basis of sex and disability, in violation of Title VII and the ADA, as well as Puerto Rico's Act 100 and Act 3, 29 P.R. Laws Ann. § 146 *et seq.* and § 467 *et seq. See,* Docket # 3, ¶¶ 44–63. Specifically, Plaintiff claims that she was terminated because of her pregnancy. *See, Id.* at ¶ 46. Plaintiff also included a claim for unjust dismissal under Puerto Rico's Act 80, 29 P.R. Laws Ann. § 185a *et seq. See, Id.* at ¶¶ 64–67.

In due course, Defendant answered the complaint and, as a defense thereto, averred that there existed between Plaintiff and Defendant an agreement to arbitrate (hereinafter the Agreement) that precluded Plaintiff from prosecuting this judicial action. *See,* Docket # 9 ¶¶ 37–43. The Agreement was signed by Plaintiff on October 25, 2004. *See,* Docket # 10–2, and included the following language:

The Company and Associate mutually agree that any dispute or controversy arising out of or in any way related any

Dispute, as defined herein, shall be resolved exclusively by final and binding arbitration pursuant to the arbitrator's written award indicating the essential findings and conclusions on which the award is based. Such arbitration shall be held in Los Angeles, California pursuant to the Model Rules for Arbitration of Employment Disputes of the American Arbitration Association then in effect.

For purposes of this Agreement, the term "Disputes" means and includes any claim or action arising out of or in any way related to: ... (b) the termination of the employment relationship between the parties; or (c) any allegation of unlawful discrimination, retaliation, or harassment. The potential Disputes, which the parties agree to arbitrate, pursuant to this Agreement, include but are not limited to:

...

Claims for unlawful discrimination, retaliation or harassment (including, but not limited to, claims based on race, sex, religion, national origin, age, marital status, or medical condition, handicap or disability);

...

Disputes arising out of or relating to the termination of the employment relationship between the parties, whether based on common law or statute, including claims based on violation of any federal, state, or other governmental law, statute, regulation, or ordinance.

"Each of the parties voluntarily and irrevocably waives any and all rights to have any Dispute heard or resolved in any forum other than through arbitration as provided herein. This waiver specifically includes, but is not limited to, any right to trial by jury."

Docket # 10–2.

## Applicable Law and Analysis

Defendant posits that, per the Agreement, Plaintiff has waived her right to bring this judicial action and must, instead, proceed to arbitration in the manner prescribed therein. In opposition to Defendant's request, Plaintiff asserts that the Agreement and consequent waiver of the judicial forum was not voluntary and knowing, because Plaintiff has a basic knowledge of English and therefore did not understand what she was signing, was not given time to peruse the documents she signed at leisure, nor did anyone explain to her the consequences of signing such documents. Plaintiff also avers that, in any event, the costs attendant to arbitration, particularly when—per the Agreement—the arbitration must take place in California, make the Agreement unenforceable.

We begin with the Federal Arbitration Act (hereinafter FAA), Congress's weapon of choice to end judicial hostility to arbitration agreements. *See, Campbell v. Gen. Dynamics Gov't Sys. Corp.*, 407 F.3d 546, 551 (1st Cir.2005) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991)). When such an agreement exists, it is to be held valid, irrevocable, and enforceable *to the same extent as other contracts. See,* 9 U.S.C.A. § 2. If suit is brought in a U.S. Court with regards to a claim which according to an arbitration agreement should be referred to arbitration, the Court must, upon request to that effect by one of the parties, stay the action until arbitration has concluded. *See,* 9 U.S.C.A. § 3. A party to an arbitration agreement aggrieved by the other party's refusal to comply with the provisions of such agreement may request that the Court compel arbitration. *See,* 9 U.S.C.A. § 4. In order to obtain an order compelling arbitration the party seeking such relief must establish the following four elements: "that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope." *InterGen N.V. v. Grina,* 344 F.3d 134, 142 (1st Cir.2003).

In analyzing the first requisite, whether a valid agreement to arbitrate exists, the Court looks mainly to state law on contracts. *See, Campbell,* 407 F.3d at 552 (citing *Perry v. Thomas,* 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987)). In addition to the state contract law analysis, when a party relies on the FAA to enforce an arbitration agreement with regards to a claim arising out of federal law, the Court must undertake a supplemental inquiry: "whether the agreement to arbitrate is enforceable with respect to the particular statutory claim at issue." *Id.*

Plaintiff here would have the Court hold the Agreement invalid because it was not "knowing and voluntary". The First Circuit faced a similar argument in *Rosenberg v. Merrill Lynch,* 170 F.3d 1 (1st Cir., 1999), which was also a Title VII case in which there existed a pre-dispute arbitration agreement between employer and employee. The First Circuit explained that the knowing and voluntary analysis stems "from thinking of arbitration as 'a *waiver* of judicial remedies'". (Citing, *Mitsubishi v. Soler Chrysler-Plymouth, Inc,* 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). The Court added "[i]t is commonplace that waivers of certain rights, particularly substantive rights, are enforceable only if they are knowing and voluntary. Whether a standard similar to the one that applies to rights such as the right to counsel should apply to waivers of a judicial forum is an open question." *Id.* (Internal citation omitted). The First Circuit then

noted that the Circuits are split as to whether the knowing and voluntary analysis represents a heightened level of protection.

In the end, however, the *Rosenberg* Court found it unnecessary to decide whether there was a heightened standard under which arbitration agreements should be scrutinized. Resolution of the case, the Court stated, depended on the language of Title VII (one of the statutes under which Rosenberg claimed relief), to wit: "[w]here appropriate and to the extent authorized by law, ... arbitration ... is encouraged to resolve disputes arising under [these laws]." *Id*, at 18–19. Nor did the *Rosenberg* Court stop there. It explained that the phrase "to the extent authorized by law", at a minimum, meant that "arbitration agreements that are unenforceable under the FAA are also unenforceable when applied to claims under Title VII." *Id* at 19. As for the term "appropriate", it bears noting that the *Rosenberg* Court found the arbitration agreement at issue there to be unenforceable because, under the circumstances present in that case [1], it was not appropriate.

We see no reason to depart from the *Rosenberg* analysis. Accordingly, whether the Agreement between Ms. Santiago and Guess can be enforced turns on whether such an agreement is authorized by the FAA and whether it was appropriate. First Circuit precedent discussed above requires that, in order to determine whether a valid agreement to arbitrate exists, we turn first to state contract law and then to the further question of whether such agreement is enforceable with respect to

the statutory claim at issue. *See, Campbell,* 407 F.3d at 552.

Plaintiff has failed to set forth any developed argument that the Agreement runs afoul of Puerto Rico contract law. Under Puerto Rico law, all contracts must meet the following three requirements: (1) "the consent of the contracting parties"; (2) "[a] definite object which may be the subject of the contract"; and (3) "the cause for the obligation which may be established." 31 P.R. Laws Ann. § 3391. Plaintiff's arguments regarding her lack of time to peruse the Agreement at leisure and her problems with the language in which it was written may be said to relate to her consent to the Agreement. However, under Puerto Rico law, consent to a contract is void only if "given by error, under violence, by intimidation, or deceit." 31 P.R. Laws Ann. § 3404. Plaintiff fails to mention any of the four vitiating elements, much less discuss their respective requirements. In any event, the Court cannot fathom that Plaintiff intended to claim that her consent was void because it was given "under violence", "by intimidation", "or deceit". There is not a hint of any of these in her arguments as to the motion to compel. As for "error", although the Court could read Plaintiff's arguments as claiming error in giving her consent, it would be error in a layman's sense, and not the type of error that renders a party's consent null. *See, Capó Caballero v. Ramos,* 83 D.P.R. 650, 673 (1961) (even when the error affects an essential element, in order for it to nullify the contract it must be excusable and an error is inexcusable if ignorance as to the real state of affairs is due to negligence

---

1. The circumstances to which the Court referred were: that the arbitration agreement did not define the range of claims subject to arbitration and that Merill Lynch had represented that the plaintiff would be advised of the rules but never provided her with such rules nor described them to her. *Rosenberg,* 170 F.3d at 19. Taking into account these facts, the First Circuit held that it would not be appropriate for the plaintiff to bear the risk of her ignorance, and instead, that risk should be borne by the defendant. *Id.*

attributable to the party that seeks to invoke the doctrine of error.) *See also, Herman v. Hogar Praderas de Amor,* 130 F.Supp.2d 257 (D.P.R.2001) (rejecting Defendant's argument that a waiver was invalid because it was in English and she did not understand the language and the other party to the agreement did not explain to her the waiver and stating that "as a general rule, a party is bound by an agreement it has signed.")

Plaintiff does not claim that she was prevented from seeking assistance, even via telephone, in understanding a document written in a language she claims she did not fully comprehend. Nor does Plaintiff claim that she asked questions of the Guess representatives present at the time she signed the Agreement but that those questions were not answered or were answered deceptively. Plaintiff does claim that she did not ask questions because there was a "rush", and that she had to sign the forms and start working right away. *See,* Docket # 13. While, at first glance, this statement appears to lay the ground for excusing Plaintiff's lack of diligence in understanding the document she was signing, in the end it lacks the force that Plaintiff seeks to attribute to it. Conspicuously absent from Plaintiff's declaration is any statement that she at least *attempted* to ask questions, but that the Defendant's representatives refused to answer in light of the "rush."

We now turn to Plaintiff's arguments regarding the forum at which arbitration is to take place, *i.e.,* California, and the cost that that would entail. A forum-selection clause "should control absent a strong showing that it should be set aside." *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). A court may refuse enforcement of such a clause if it is unreasonable or unjust, or "if the chosen forum is seriously inconvenient for the trial of the action." *Id.* "Generally, courts should enforce forum selection clauses unless ... the parties would be inconvenienced to the extent of being deprived of their day in Court." *Miró González v. Avatar Realty,* 177 F.Supp.2d 101, 105 (D.P.R.2001) (citing *Bristol Babcock, Inc. v. Puerto Rico Electric Power Authority,* 930 F.Supp. 710, 711 (D.P.R.1996)).

Under the circumstances present in this case, enforcing the forum selection clause would essentially deprive Plaintiff of her statutory claim. Plaintiff has filed an affidavit stating that she is currently employed as a waitress and earns $780.00 a month. *See,* Docket # 21–2. Plaintiff's income falls below the poverty line, thus entitling her to welfare in the form of food stamps. *Id.* This supplements her income by an additional $ 236.00. Even adding the welfare to her income, Plaintiff's monthly expenses, including rent and child care, among others, exceed her income. *Id.* Even assuming, *arguendo,* that deposition witness testimony would be appropriate and that Plaintiff would not have to bear the cost of her witnesses' travel to California, it is evident that Plaintiff cannot shoulder the additional expense of traveling to California for the arbitration. Airfare from San Juan to Los Angeles costs several hundred dollars and the flight lasts some seven hours, approximately the same amount of time a flight from San Juan to Madrid. Furthermore, there are also expenses associated with lodging, transportation, and food once in Los Angeles. On Plaintiff's income, which is insufficient to cover her regular monthly expenses, she is unable to prosecute her cause of action if such prosecution is to take place in California. Enforcement of the forum selection clause in these circumstances—in which it is equivalent to depriving Plaintiff of her statutory claim—is

unjust and unreasonable. *Cf. Weiss v. Columbia Pictures Television, Inc.,* 801 F.Supp. 1276, 1280–81 (S.D.N.Y.1992) (noting that in light of the salary at which the plaintiff was employed by the defendant, it appeared that he was capable of prosecuting his action in the California forum and thus the "increased expense and difficulty do not rise to the level necessary to cause this Court to refuse enforcement of a forum selection clause.").

## Conclusion

Accordingly, arbitration must take place, as agreed to by the parties. However, since the forum-selection clause is not enforceable, such arbitration must take place in Puerto Rico.

**SO ORDERED.**