**EAZY ELECTRONICS & TECHNOLOGY, LLC, et al, Plaintiffs,**

v.

**LG ELECTRONICS, INC., et al, Defendants.**

**CIVIL NO. 16–1830 (GAG)**

United States District Court, D. Puerto Rico.

Filed 12/30/2016

Miguel E. Gierbolini-Gierbolini, Gierbolini & Carroll, PSC, San Juan, PR, for Plaintiffs.

Alfredo F. Ramirez–MacDonald, O'Neill & Borges, San Juan, PR, for Defendants.

## OPINION AND ORDER

GUSTAVO A. GELPI, United States District Judge

Eazy Electronics & Technology, LLC and Billy Medina–Torres (collectively "Plaintiffs") filed the present action against LG Electronics, Inc., LG Electron-ics Miami, Inc. and LG Electronics Pana-ma, S.A. (collectively "Defendants") seek-ing the redress of injuries suffered as a result of the Defendants' alleged failure to abide by the terms of an agency contract entered into by the parties. (Docket No. 1.) Defendants responded requesting this Court to enter an order compelling arbi-tration pursuant to the Federal Arbitra-tion Act, 9 U.S.C. §§ 1–307 ("FAA"), given that the same contract which Plaintiffs allege that the Defendants have breached includes an arbitration clause that covers the claims set forth in the Complaint. (Docket No. 8.) After considering the par-ties' filings and applicable law, the Court **GRANTS** Defendants' Motion to Dismiss and Compel Arbitration at Docket No. 8.

## I. Relevant Factual & Procedural Background

Co–plaintiff Eazy Electronics & Tech-nology, LLC ("Eazy Electronics") is a company headquartered in San Juan, Puerto Rico which offers repair services to manufacturers and distributors of elec-tronic equipment. (Docket No. 1 ¶¶ 2, 9.) The company also sells electronic products to businesses in Puerto Rico's hospitality industry. Id. ¶ 10. Co–plaintiff Billy Medi-na–Torres is the principal officer of Eazy Electronics. Id. ¶ 12. Co–defendant LG Electronics, Inc. ("LG Electronics") is a corporation organized under the laws of the Republic of Korea with headquarters located in Seoul, South Korea. Id. ¶ 3. LG Electronics, Inc. is an affiliate of co-defen-dants LG Electronics Miami, Inc. ("LG Miami") and LG Electronics Panama, S.A. ("LG Panama"). Id. ¶¶ 3–5, 13 & 19.

Several years ago, Eazy Electronics and LG Electronics Alabama, Inc. ("LG Ala-bama") executed a service agreement un-der which Eazy Electronics would provide warranty services to customers of LG products in Puerto Rico. Id. ¶ 15. For ap-

proximately four years, Eazy Electronics claims to have enjoyed a mutually beneficial relationship with LG Alabama and LG USA, Inc. Id. ¶ 15. In 2012, the responsibilities related to the sale of LG products in Puerto Rico were transferred from LG Alabama to LG Miami. Id. ¶ 19.

Afterwards, officials from LG Electronics and LG Miami—seeking to grow their presence in Puerto Rico's market—contacted and met with Medina–Torres. Id. ¶¶ 20–22. Effective on June 10, 2012, LG Electronics, Inc. and Medina Torres—on behalf of Eazy Electronics—established a Non–Exclusive Agency Agreement ("Agency Agreement") where Eazy Electronics agreed to serve as LG Electronics, Inc.'s non-exclusive agent in Puerto Rico. (Docket 8–1 at 5, 21.) The stated purpose of the agreement was for Eazy Electronics to assist and promote LG Electronics, Inc.'s sales activities within Puerto Rico. Id. at 5.

On or about April of 2013, Eazy Electronics and LG Miami subscribed a Master Supply Agreement ("Supply Agreement") under which LG Miami would provide LG products to Eazy Electronics for resale in Puerto Rico. (Docket No. 1 ¶¶ 35–36.) Additionally, in July 2013, Eazy Electronics and LG Panama signed a Non–Exclusive Technical Service Agreement ("Service Agreement") where Eazy Electronics agreed to provide LG Panama the warranty and repair services that it previously provided for LG Alabama. Id. ¶ 37–38.

Plaintiffs filed the present suit on April 27, 2016. In the Complaint, Plaintiffs allege that they provided information related to Eazy Electronics' clients to representatives of LG Miami that directly resulted in new sales for LG Electronics and LG Miami. Id. ¶¶ 23, 30. Plaintiffs also claim that they provided leads and referrals that resulted in additional sales to Defendants. Id. ¶ 39. However, Plaintiffs allege that after they shared this information, and provided such leads and referrals, Defendants opted to sell directly to Eazy Electronics' clients without compensating Plaintiffs. Id. ¶ 41. Furthermore, Plaintiffs add that Defendants also hired a third party, POS Caribbean, to perform the warranty and repair services that Eazy Electronics provides. Id. ¶ 41.

Plaintiffs claim that these actions violate Puerto Rico's Sales Representative Act, P.R. LAWS ANN. tit. 10, §§ 279–279h, and breach several contracts established between Defendants and Eazy Electronics. Id. ¶¶ 51, 52. Plaintiffs further add that Defendants caused them substantial damages by incurring in deceit, bad faith and breach of fiduciary duties in the performance of the Agency Agreement. Id. ¶ 58. Last, Plaintiffs assert that Defendants' employment of POS Caribbean tortuously interferes with Eazy Electronics' contractual rights. Id. ¶ 70.

Defendants filed a Motion to Dismiss and Compel Arbitration. (Docket No. 8.) They contend that the Agency Agreement contains a compulsory arbitration clause that applies to all of the Plaintiffs' claims. Id. ¶ 6. Defendants argue that the FAA and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, as adopted in Chapter Two of the FAA, 9 U.S.C. §§ 201–208, require the enforcement of the arbitration clause that was contractually agreed upon by the parties. Defendants also assert that, even if the tortious interference claim presented by Plaintiffs is not covered by the arbitration clause in the Agency Agreement, this Court should dismiss the claim for failure to state a claim upon which relief may be granted and for failure to join a required party. Id. ¶ 23.

Plaintiffs opposed Defendant's motion, arguing that the arbitration clause contained in the Agency Agreement should

not be enforced by this Court because it is contrary to the public policy recognized by the Puerto Rico Supreme Court in Unisys P.R., Inc. v. Ramallo Bros. Printing, Inc., 128 D.P.R. 842 (1991). (Docket No. 11 at 2.) Plaintiffs also argue that the arbitration clause is unconscionable and thus invalid under the FAA. Id. at 5. Furthermore, they contend that the arbitration clause and the Agency Agreement's "waiver of discovery clause" infringe upon essential attributes of arbitration proceedings and should be invalidated by this Court for those reasons as well. Id. at 8.

Defendants replied, averring that the FAA preempts any state law or court decision inconsistent with its terms. (Docket No. 14 at 2.) Moreover, Defendants also assert that Plaintiffs' argument to the effect that the arbitration clause is unconscionable and invalid under the Federal Arbitration Act misconstrues applicable case law and does not represent a valid contractual defense under Puerto Rico law. Id.

Plaintiffs filed a sur-reply in which they rehashed the arguments presented in their opposition to the motion to dismiss and countered that unconscionability is a valid contractual defense under Puerto Rico law. (Docket No. 17 at 3.)

## II. Standard of Review

■ Under the FAA, "[i]f suit is brought in a U.S. Court with regards to a claim which according to an arbitration agreement should be referred to arbitration, the Court must, upon request to that effect by one of the parties, stay the action until arbitration has concluded." Sanchez-Santiago v. Guess, Inc., 512 F.Supp.2d 75, 78 (D.P.R. 2007); see also 9 U.S.C. § 3. In order to obtain an order compelling arbitration, the party seeking the order, must establish "that a valid agreement to arbitrate exists, that the movant is entitled to

invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope." InterGen N.V. v. Grina, 344 F.3d 134, 142 (1st Cir.2003).

Under Rules 12(b)(1) and 12(b)(6), a defendant may move to dismiss an action against him for lack of federal subject-matter jurisdiction or for failure to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(1); Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss, the court must decide whether the complaint alleges enough facts to "raise a right to relief above the speculative level." See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). The court accepts as true all well-pleaded facts and draws all reasonable inferences in the plaintiff's favor. See id.; Parker v. Hurley, 514 F.3d 87, 90 (1st Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555, 127 S.Ct. 1955). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).

## III.—Discussion

### A.—The Federal Arbitration Act

A party seeking to compel arbitration under the FAA must demonstrate "[1] that a valid agreement to arbitrate exists, [2] that the movant is entitled to invoke the arbitration clause, [3] that the other party is bound by that clause, and that [4] the

claim asserted comes within the clause's scope." Dialysis Access Ctr., LLC v. RMS Lifeline, Inc., 638 F.3d 367, 375 (1st Cir. 2011) (quoting InterGen N.V. v. Grina, 344 F.3d 134, 142 (1st Cir. 2003)).

Section two of the FAA provides that:

A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

■ Federal policy strongly favors arbitration over litigation, so long as an agreement to arbitrate exists in the first place. See HIM Portland, LLC v. DeVito Builders, Inc., 317 F.3d 41, 43 (1st Cir. 2003). Thus, "there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (citation omitted); Mun'y of San Juan v. Corp. para el Fomento Econ. de La Ciudad Capital, 415 F.3d 145, 149 (1st Cir. 2005). "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985).

B. The Convention on the Recognition and Enforcement of Foreign Arbitral Awards

The Supreme Court has recognized that the "emphatic" federal policy favoring arbitration "applies with special force" in international commercial transactions, at least since the United States adopted the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, September 30, 1970, 21 U.S.T. 2517 ("Convention"), and amended the FAA to include the Convention's terms. Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc., 473 U.S. 614, 631, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); See 9 U.S.C. §§ 201–208. The main goal of the Convention—and its adoption by the United States—was to "encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." Scherk v. Alberto–Culver Co., 417 U.S. 506, 520 n.15, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974).

■ The First Circuit has identified a "very limited inquiry" of four preliminary questions that a district court must resolve when ruling on a request to enforce a contractual arbitration clause pursuant to the Convention. Ledee v. Ceramiche Ragno, 684 F.2d 184, 186 (1st Cir. 1982). First, is there an agreement *in writing* to arbitrate the controversy between the parties? Second, does the agreement provide for arbitration in a country that is a *signatory* to the Convention? Third, does the agreement arise out of a *commercial* relationship? Fourth, and finally, does the agreement include *foreign citizens* as parties or does the commercial relationship from which the agreement arises have some reasonable relation with a *foreign state*? Id. at 186–87.

■ If these four questions are resolved in the affirmative, then the district court *must* compel arbitration of the dispute un-

less the arbitration clause is deemed to be "null and void, inoperative or incapable of being performed." Id. (citing Convention, Article II(3)). It is important to note that this language only refers to circumstances that can be applied internationally in a neutral manner, such as those involving "fraud, mistake, duress, and waiver [.]" Id. (citations omitted).

## C. Agreement to Arbitrate Under the Convention

### 1. Written agreement to arbitrate the disputes between the parties

■ Before enforcing an agreement to arbitrate under the Convention, the first issue that must be resolved by this Court is whether there is a written agreement to arbitrate the disputes between the parties. Id. at 186 (citing Convention, Articles II(1), II(2)). As discussed in the first part of this opinion, the Complaint raises four claims against the Defendants: (1) constructive or *de facto* termination of the Agency Agreement under Puerto Rico's Sales Representative Act, (Docket No. 1 ¶¶ 49–54.); (2) bad faith and breach of fiduciary duties in the performance of the Agency Agreement, id. ¶¶ 55–58; (3) breach of the Agency Agreement, id. ¶¶ 59–66; and (4) tortious interference with the Agency Agreement, id. ¶¶ 67–71.

Defendants argue that all four of the claims are encompassed within the language of the arbitration clause in the Agency Agreement, which reads as follows:

All disputes, controversies or disagreements which may arise between the parties, in relation to or in connection with this Agreement, or for the breach hereof shall be finally settled by arbitration. The arbitration shall be conducted by three (3) arbitrators in Seoul, the Republic of Korea, in accordance with the Commercial Arbitration Rules of the Korean Commercial Arbitration Board. The award rendered by the arbitrators shall be final and binding upon both parties.

(Docket No. 8–1 at 15.)

The Plaintiffs have not attempted to dispute whether their claims are related to or connected with the Agency Agreement; given their own admissions in the Complaint, nor could they. Describing Count No. 1, Plaintiffs state that "Defendant's impairment and constructive de facto termination frustrate the object of the *Agency Agreement* causing damages to Plaintiff." (Docket No. 1 ¶ 51.) (emphasis added). As to Count No. 2, Plaintiffs argue that "Defendants took advantage of Plaintiffs' expertise and good faith and took for itself the opportunities brought to them by Plaintiffs, contrary to the requirements of the *Agency Agreement*." Id. ¶ 56 (emphasis added). Count No. 3 is explicitly predicated on a breach of the Agency Agreement: "Defendants did not fulfill their end under the *Agency Agreement*." Id. ¶ 63 (emphasis added). Finally, Count No. 4 alleges tortious interference by the Defendants with, precisely, the Agency Agreement. Id. ¶ 70. As is evident from the Plaintiffs' pleadings, all of the counts refer to and are directly related to the Agency Agreement.[1]

There is no controversy as to whether both parties signed the Agency Agreement or whether Defendants are entitled to in-

---

1. Since the Court finds that all of the Plaintiffs' claims are encompassed by the arbitration agreement, it is unnecessary to consider Defendants' alternative argument that Plaintiffs' tortious interference claim "should be dismissed for failure to state a claim upon which relief may be granted and for failure to join a party under Fed. R. Civ[.] P. 19." (Docket No. 8 ¶ 23.)

voke the arbitration clause of the agreement. (See Docket No. 8 at 4.) As a result, this Court concludes that the arbitration clause of the Agency Agreement is a written agreement to arbitrate, struck between the parties to this case, that encompasses all of the Plaintiffs' claims.

*2. Signatory to the Convention*

The next step in the Ledee four-part inquiry is to determine whether the Agency Agreement provides for arbitration in the territory of a country that is a signatory to the Convention. Ledee, 684 F.2d at 186 (citing 9 U.S.C. § 206). As discussed above, the arbitration clause of the Agency Agreement calls for the arbitration proceedings to be conducted in Seoul, Republic of Korea. The Republic of Korea is a signatory to the Convention. See Convention, Article VIII; see also *Status–Convention on the Recognition and Enforcement of Foreign Arbitral Awards (New York, 1958)*, UNITED NATIONS COMMISSION ON INTERNATIONAL TRADE LAW, http://www.uncitral.org/uncitral/en/uncitral_texts/arbitration/ NYConvention_status.html (last visited Nov. 29, 2016).

*3. Commercial Relationship*

The agreement to arbitrate must arise out of a commercial relationship, contractual or not. Ledee, 684 F.2d at 187 (citing 9 U.S.C. § 202). The purpose of the Agency Agreement was to appoint Eazy Electronics as LG Electronics' "agent to assist and promote its sales activities" in Puerto Rico. (Docket No. 8–1 at 5.) Therefore, the Agency Agreement arises out of a legal relationship that is clearly commercial in nature.

*4. Foreign citizen or state*

The last question that must be answered is whether one of the parties to the agreement to arbitrate is a foreign citizen or whether the commercial relationship between the parties has a reasonable connection with a foreign state. Ledee, 684 F.2d at 187 (citing 9 U.S.C. § 202). The parties to the Agency Agreement are LG Electronics and Billy Medina, on behalf of Eazy Electronics. (Docket No. 8–1 at 19.) LG Electronics, Inc. is a corporation organized pursuant to the laws of, and headquartered in, the Republic of Korea. (Docket No. 1 ¶ 3.) Hence, a party to the Agency Agreement is a foreign citizen.

Considering that all four questions have been resolved in the affirmative, this court must compel arbitration unless the arbitration clause of the Agency Agreement is found to be " 'null and void, inoperative or incapable of being performed'." Ledee, 684 F.2d at 186 (citation omitted). Although the Plaintiffs have not explicitly presented such an argument, they have challenged the validity and enforceability of the arbitration clause. The Court will thus proceed to determine whether the Plaintiffs' thesis on the enforceability of the clause renders it null and void, inoperative or incapable of being performed under the Convention.

**D.  Enforceability of an Agreement to Arbitrate under the Convention**

In their Opposition to Motion to Dismiss Plaintiffs raise two arguments against enforcement of the Agency Agreement's arbitration clause. First, Plaintiffs contend that the arbitration clause of the Agency Agreement should not be enforced because it is "contrary to public policy pursuant to the forum selection test set forth by the Puerto Rico Supreme Court in Unisys v. Ramallo and by [this Court] in Miró González v. Avatar Realty, Inc." (Docket No. 11 at 2.) Second, Plaintiffs contend that the Agency Agreement's requirement to arbitrate in the Republic of Korea is unconscionable and, as such, should be invalidated. Id. at 8. We address these arguments in turn.

### 1. Forum–selection test and the Convention

Plaintiffs hinge their unenforceability argument on inconvenience grounds: "Defendants imposition of an arbitration clause requiring that disputes be heard by an arbitration panel in the Republic of Korea is, on its face not merely inconvenient to Plaintiffs but it practically deprives Plaintiffs from its day in court." (Docket No. 11 at 3.) Plaintiffs further add that "[f]orcing an individually owned small Puerto Rico business operator like plaintiffs Eazy Electronics to seek redress for the injuries and damages suffered in Puerto Rico in a distant foreign country is unreasonable, inequitable and unfair." Id. at 4. Plaintiffs cite Ramallo as support, arguing that under the forum-selection test adopted in that case the grave inconvenience of having to arbitrate their claims in the Republic of Korea renders the arbitration agreement unenforceable. Id. at 3–4.

Defendants counter that any reference to the forum-selection test just described "as a way to circumvent the application of the arbitration clause according to its own terms is improper and irrelevant." (Docket No. 14 at 4.) Defendants support their argument in the FAA and the "strong federal policy favoring arbitration" which "preempts any State law to the contrary, such as the standard adopted in [Ramallo.]" Id.

The standard used to determine the enforceability of forum-selection clauses is broader than the "null and void" standard recognized in Ledee. Since we have already determined that the arbitration clause of the Agency Agreement is an agreement to arbitrate under the Convention, Ledee's heightened standard controls.

Plaintiffs' argument under Ramallo is inapposite because even if this Court were to agree that having to pursue their claims against the Defendants in the Republic of Korea would be gravely inconvenient to the point of practical impossibility,[2] this conclusion would not be enough to invalidate an agreement to arbitrate under the Convention. As the First Circuit held in Ledee, once a district court performs the relevant four-question limited inquiry, and resolves all four questions in the affirmative, "it must order arbitration unless it finds the agreement 'null and void, inoperative or incapable of being performed'." Ledee, 684 F.2d at 187 (citing Convention, Article II(3)). This disposition "must be interpreted to encompass only those situations—such as fraud, mistake, duress, and waiver—that can be applied neutrally on an international scale." Id.

■ Grave inconvenience due to the distance between the arbitration forum and the principal place of business of one of the parties is not one of those situations that may be applied neutrally on an international scale, especially when the arbitration forum is where the headquarters of one of the parties is located. Furthermore, such an argument would be contrary to the goals behind the adoption of the Convention in the United States, which were to "encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." Scherk, 417 U.S. at 520 n.15, 94 S.Ct. 2449. Simply put, allowing a party to

---

**2.** It is doubtful that Plaintiffs have met the "heavy burden of proof" required by applicable case law in order to invalidate a forum-selection clause on grounds of inconvenience. Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 595, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991) (citation omitted).

a valid arbitration agreement to escape a freely-assumed duty, based solely on the distance of the chosen forum, contravenes the text and purpose of the Convention.

## 2. Unconscionability

█ Plaintiffs also argue that the arbitration clause of the Agency Agreement should not be enforced because it is unconscionable. (Docket No. 11 at 6.) Plaintiffs contend that the clause is invalid under section 2 of the FAA which states that an arbitration clause is valid, irrevocable, and enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Generally, unconscionability is one of those grounds that exist at law or in equity for the revocation of any contract. See KKW Enters., Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp., 184 F.3d 42, 50 (1st Cir. 1999) (citing Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 682, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996)) ("*Only* 'generally applicable contract defenses, such as fraud, duress or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2' of the FAA").

Plaintiffs' argument, however, ultimately misses the mark, given First Circuit precedent. In Ledee, the parties seeking to avoid the enforcement of an arbitration agreement argued that the clause was contrary to Puerto Rico's Dealer Act, P.R. Laws Ann. tit. 10, § 278b–2, and the public policy behind the statute. Ledee, 684 F.2d at 186. Just as Plaintiffs contend in this case, the appellants in Ledee argued that section 2 of the FAA allows for the invalidation of the arbitration clause that they had agreed to since there were, allegedly, grounds at law or in equity to set aside the clause. Id.

Yet, the First Circuit rejected the premise that the cited phrase of section 2 of the FAA was controlling given that the clause under consideration was an arbitration agreement under the Convention. Id. ("We need not, however, consider to what extent the phrase "grounds as exist at law or in equity" incorporates Commonwealth law. ... The simple reason is that the district court did not purport to exercise authority under Chapter One of the Federal Arbitration Act; *rather, it acted under Chapter Two of the Act, 9 U.S.C. s 201 et seq., which implemented the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ....*") (emphasis added).

An identical result is warranted in this case. As an agreement to arbitrate under the Convention, the arbitration clause of the Agency Agreement must be enforced by this court unless the clause is found to be "null and void, inoperative or incapable of being performed." Id. at 187 (citation omitted). This phrase has been interpreted by the First Circuit "to encompass only those situations–such as fraud, mistake, duress, and waiver–that can be applied neutrally on an international scale." Id. (citation omitted). It is under this standard that we must evaluate Plaintiffs' arguments.

█ In their Opposition, Plaintiffs refer to the Agency Agreement as an adhesion contract. (Docket No. 11 at 7.) However, labeling the Agency Agreement as an adhesion contract does not further Plaintiffs' cause. Such a finding, under Puerto Rico law, only implies that ambiguities in the contract's dispositions must be interpreted in favor of the party that did not participate in its drafting. See Nieves v. Intercontinental Life Ins. Co. of P.R., 964 F.2d 60, 63 (1st Cir. 1992) ("But adhesion does not imply nullity of a contract. ... If the wording of the contract is explicit and its language is clear, its terms and conditions are binding on the parties."). The assertion that the Agency Agreement is an

adhesion contract is irrelevant since Plaintiffs have not argued that any of the terms of the arbitration agreement are ambiguous or obscure.

Plaintiffs also contend that they were unaware that they agreed to arbitrate their claims in the Republic of Korea. (Docket No. 11 at 7.) This assertion, by itself, is insufficient to challenge the validity of the clause. See Soto v. State Indus. Prod., Inc., 642 F.3d 67, 78 (1st Cir. 2011).

Finally, Plaintiffs argue that the contract is substantively unconscionable due to the hardship that having to litigate its claims in the Republic of Korea would impose on a company of its size. We already rejected a very similar argument in our forum-selection test discussion and find no reason to reach a different result here, given that, even if Plaintiffs were successful in proving procedural and substantive unconscionability, unconscionability is not a defense that may be effectively applied neutrally on an international scale. See Bautista v. Star Cruises, 396 F.3d 1289, 1302 (11th Cir. 2005) (rejecting unconscionability as a defense under the Convention's "null and void" clause).

In sum, Plaintiffs' have failed to show the arbitration clause of the Agency Agreement is "null and void, inoperative or incapable of being performed." Ledee, 684 F.2d at 187 (citation omitted). Accordingly, the Court must order the Plaintiffs to arbitrate their claims against the Defendant in accordance with the terms of the Agency Agreement. See InterGen N.V. v. Grina, 344 F.3d 134, 141 (1st Cir. 2003) ("enforcing arbitration clauses under the New York Convention is an obligation, not a matter committed to district court discretion").

### E. Waiver–of–Discovery Clause

Plaintiffs have also request that this Court invalidate the "waiver of discovery clause" that comprises Section 12.5 of the Agency Agreement. (Docket No. 11 at 9.) They contend that discovery is a "fundamental attribute" of arbitration, citing as support AT & T Mobility LLC v. Concepcion, 563 U.S. 333, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011). Defendants reject such an argument, averring that AT & T Mobility LLC does not hold that discovery is a fundamental attribute of arbitration or that waiver-of-discovery clauses contravene the FAA. (Docket No. 14 at 8.)

In AT & T Mobility LLC the Supreme Court held that a state may not require the availability of class-wide arbitration, as such an imposition "interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." AT & T Mobility LLC, 563 U.S. at 344, 131 S.Ct. 1740. To be clear, the Supreme Court did not hold that class-wide arbitration -or any other type of arbitration- interferes with the fundamental attributes of arbitration, but rather that a state law that requires its availability does, as it compromises the flexibility and informality that parties may desire when seeking an alternative dispute resolution method such as arbitration. See id. at 348, 131 S.Ct. 1740. The Supreme Court recognized that a consensual agreement for class-wide arbitration would not present the same problem. Id.

Accordingly, Plaintiffs' reliance on AT & T Mobility LLC as support for its request to invalidate the waiver-of-discovery of the Agency Agreement is misplaced. The waiver-of-discovery clause does not contravene any fundamental attribute of arbitration. Accordingly, their request to invalidate the clause is denied.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss and Compel arbitration at Docket No. 8.

Plaintiff's claims against Defendants are hereby dismissed as the claims must proceed to arbitration.

**SO ORDERED.**