**Daniel CRESPO and Jannice Jusino Cruz, Plaintiffs,**

v.

**MATCO TOOLS CORPORATION, Defendant.**

**CIVIL NO. 17–1394 (GAG)**

United States District Court, D. Puerto Rico.

Signed 08/15/2017

---

Wilbert Mendez–Marrero, San Juan, PR, for Plaintiffs.

Raul M. Arias–Marxuach, McConnell Valdes, LLC, San Juan, PR, for Defendant.

### OPINION AND ORDER

GUSTAVO A. GELPI, United States District Judge

Daniel Crespo ("Crespo") and Jannice Jusino Cruz ("Jusino") (collectively "Plaintiffs") filed the present action against Matco Tools Corporation ("Matco" or "Defendant") seeking the redress of injuries suffered as a result of the Defendant's alleged breach of the parties' distribution contract. (Docket Nos. 1; 8.) Defendant responded by moving to dismiss the complaint and compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1–16 ("FAA"), given that the distribution contract's arbitration clause applies to Plaintiffs' claims. (Docket No. 11.)

After considering the parties' filings and applicable law, the Court **GRANTS** Defendant's Motion to Dismiss and Compel Arbitration at Docket No. 11.

### I. Relevant Factual & Procedural Background

Co-plaintiff Crespo is a citizen of Bayamón, Puerto Rico. (Docket No. 8 ¶ 1.) Co-plaintiff Jusino is a citizen of Vega Baja, Puerto Rico. Id. ¶ 2. Defendant Matco is a

Delaware corporation with its principal place of business in Stow, Ohio. (Docket No. 11 ¶ 3.) Matco manufactures and sells high precision automotive tools, accessories, and equipment. (Docket Nos. 8 ¶ 3; 11 ¶¶ 2–3.) Although Matco does not have any manufacturing facilities in Puerto Rico, it is active in all fifty U.S. states, as well as in Puerto Rico. (Docket No. 11 ¶¶ 3–4.)

On October 24, 2011, Plaintiffs entered into a *Matco Tools Distributorship Agreement* ("Agreement") with Matco. (Docket Nos. 8 ¶ 5; 11 ¶ 5.) The Agreement appointed Plaintiffs as an authorized mobile distributor to sell and service Matco's product in a certain, exclusive, and specified geographic area within Puerto Rico. (Docket No. 8 ¶ 5.) Plaintiffs and Matco also executed several other agreements, including a security agreement, a software agreement, a web page agreement, and agreements under which Plaintiffs could enter into purchase-security agreements with their customers and assign those agreements to Matco. (Docket No. 11 ¶ 6.)

On March 30, 2016, and April 25, 2016, Plaintiffs sent notice of claim letters to Matco, addressing Matco's alleged breach of its contractual allegations under the purchase security agreements, and challenging purported illegal and unwarranted charges against Plaintiffs. (Docket No. 8 ¶ 45.) Matco responded on May 5, 2016, denying the allegations. Id. ¶ 46. A year later, on March 9, Matco sent Plaintiffs a *Notice of Cause for Separation*, citing an outstanding debt of $14,331.31 that would result in Plaintiffs' termination if not paid on or before March 27, 2017. Id. ¶ 50. On or around March 27, 2017, Plaintiffs were separated and terminated as a distributor because of Plaintiffs' failure to pay the amounts owed to Matco. Id. ¶ 52.

Plaintiffs filed suit on March 24, 2017, alleging breach of contract, termination without just cause in violation of Puerto Rico's Dealer's Contract Law, P.R. Laws Ann., tit. 10, § 278 *et seq.* ("Law 75"), as well as compensatory and punitive damages pursuant to Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann., tit. 31, § 5139 ("Article 1802"). (Docket Nos. 1; 8.) In this Complaint, Plaintiffs argue that Matco both overcharged and underpaid Plaintiffs over the course of their commercial relationship, causing Plaintiffs to default in their contractual obligations. (Docket No. 8 ¶¶ 49, 60.)

Plaintiffs maintain that Matco, alleging irregularities like fraud and identity theft, would both "chargeback" credit from Plaintiffs' purchase security agreement ("PSA") reserve and keep revenue meant for Plaintiffs' operating purchase account ("OPA"). (Docket No. 8 ¶¶ 7, 12, 25, 35, 37.) Plaintiffs assert that Matco's practices violated the terms of their *Distributor's Purchase Security Agreement Recourse Credit Assignment* ("PSA–RCA"). (Docket No. 8 ¶ 7.) Plaintiffs further contend that Matco's behavior limited Plaintiffs' purchase capacity, which reduced Plaintiffs' inventory and negatively affected sale volumes. Id. ¶¶ 32, 36.

Matco filed a Motion to Dismiss and Compel Arbitration. (Docket Nos. 6; 11.) Matco argues that the Agreement contains a compulsory arbitration clause that applies to all of Plaintiffs' claims. (Docket No. 11 ¶¶ 8–10.) Matco asserts that Plaintiffs should be compelled to arbitrate all of their claims against Matco because the claims fall within the scope of a written arbitration provision involving commerce, which satisfies one of the FAA's requirements. Id. ¶¶ 4, 7. Matco also claims that Plaintiffs' allegations arose out of, and are connected to, the Agreement or alleged breaches of the same. Id. ¶ 9.

Plaintiffs opposed Matco's motion, arguing that, even if the Court finds the Agree-

ment to govern, arbitration would not be appropriate because their claims fall into one of the Agreement's exceptions to arbitration. (Docket No. 16 at 12.) Specifically, Plaintiffs contend that Section 12.5 of the Agreement, which lists some disputes that are not subject to arbitration, includes "any dispute or controversy involving immediate termination of this Agreement by Matco pursuant to 11.4 [of] this Agreement." (Docket Nos. 11–2 §§ 11.4, 12.5; 16 at 12.) Thus, Plaintiffs claim that this Court should deny Matco's motion because Plaintiffs' termination triggers an exception to arbitration listed in the Agreement. (Docket No. 16 at 13.) Alternatively, Plaintiffs add that their dispute instead falls within the scope of other contracts between the parties that do not invoke the Agreement's arbitration terms. Id. Plaintiffs also argue that, by immediately terminating its relationship with Plaintiffs, Matco waived any right to arbitration. Id. at 15.

Matco replied, averring that the Agreement indeed applies to Plaintiffs' claims, as the Agreement's scope "include[es] all exhibits and addenda." (Docket Nos. 11–2 § 13.5; 19 at 3.) Matco also contests Plaintiffs' characterization of the exceptions in Section 12.5 of the Agreement, noting that Matco sent Plaintiffs a ten-day notice— and in fact gave Plaintiffs eighteen days— to cure the failure to pay amounts owed under the Agreement. (Docket No. 19 at 4–5.) Matco counters Plaintiffs' waiver argument by specifying that there is no language in the Agreement that negates post-expiration arbitration. Id. at 5.

Plaintiffs sur-replied, restating arguments presented in their opposition to the motion to dismiss, and again disputing Matco's interpretation of the Agreement's applicability to Plaintiffs' present claims. (Docket No. 22.)

## II. Standard of Review

Under the FAA, "[i]f suit is brought in a U.S. Court with regards to a claim which according to an arbitration agreement should be referred to arbitration, the Court must, upon request to that effect by one of the parties, stay the action until arbitration has concluded." Sanchez–Santiago v. Guess, Inc., 512 F.Supp.2d 75, 78 (D.P.R. 2007); see also 9 U.S.C. § 3. To obtain an order compelling arbitration, the party seeking the order must establish "that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope." InterGen N.V. v. Grina, 344 F.3d 134, 142 (1st Cir. 2003).

Under Rules 12(b)(1) and 12(b)(6), a defendant may move to dismiss an action against him for lack of federal subject-matter jurisdiction or for failure to state a claim upon which relief can be granted. See FED. R. CIV. P. 12(b)(1), (6). When considering a motion to dismiss, the court must decide whether the complaint alleges enough facts to "raise a right to relief above the speculative level." See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The court accepts as true all well-pleaded facts and draws all reasonable inferences in the plaintiff's favor. See id.; Parker v. Hurley, 514 F.3d 87, 90 (1st Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555, 127 S.Ct. 1955). "[W]here the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'– 'that the pleader is entitled to relief.' " Iqbal, 556 U.S. at 679, 129 S.Ct. 1937 (quoting FED. R. CIV. P. 8(a)(2)).

### III. Discussion

■ Congress enacted the FAA in 1925 to overcome judicial resistance to arbitration. See AT & T Mobility LLC v. Concepcion, 563 U.S. 333, 339, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011); Colon Vazquez v. El San Juan Hotel & Casino, 483 F.Supp.2d 147, 150 (D.P.R. 2007). The FAA allows parties to an arbitrable dispute to avoid court and move into arbitration quickly and easily. See Colon Vazquez, 483 F.Supp.2d at 151 (quoting Southland Corp. v. Keating, 465 U.S. 1, 7, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984)).

Section two of the FAA "articulates the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." Id. Section two of the FAA states as follows:

> A written provision in … a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

■ Where a contract contains an arbitration clause, "there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' " Eazy Electronics & Tech., LLC v. LG Electronics, Inc., 226 F.Supp.3d 68, 73 (D.P.R. 2016) (Gelpí, J.) (citing AT & T Techs., Inc. v. Comm. Workers of Am., 475

U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)). The FAA leaves no room for district court discretion, instead "mandat[ing] that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985).

■ A party seeking to compel arbitration under the FAA must demonstrate "[1] that a valid agreement to arbitrate exists, [2] that the movant is entitled to invoke the arbitration clause, [3] that the other party is bound by that clause, and that [4] the claim asserted comes within the clause's scope." Eazy Electronics & Tech., LLC, 226 F.Supp.3d at 72–73 (citing Dialysis Access Ctr., LLC v. RMS Lifeline, Inc., 638 F.3d 367, 375 (1st Cir. 2011)).

In this case, the first factor, whether there is a valid arbitration clause, is not at issue. While the parties provide differing interpretations of the arbitration clause's applicability, neither party contests the validity of the arbitration clause itself. See Dialysis Access Ctr., LLC, 638 F.3d at 383. The first factor is therefore met.

■ The second factor considers whether the movant is entitled to invoke the arbitration clause. Here, the Agreement provides that "all breaches, claims, disputes and controversies … between the Distributor … and Matco … will be determined exclusively by binding arbitration." (Docket No. 11–2 § 12.1.) The Agreement does not limit the use of arbitration to either party, but rather allows both parties to use arbitration for dispute resolution. Consequently, the movant is entitled to invoke the arbitration clause.

■ The third factor addresses whether the other party is bound by the arbitration clause. Because arbitration is a matter of contract, a party "cannot be

required to submit to arbitration any dispute which he has not agreed so to submit." InterGen N.V. v. Grina, 344 F.3d 134, 142–43 (1st Cir. 2003) (quoting AT & T Techs., Inc., 475 U.S. at 648, 106 S.Ct. 1415). This is a narrow inquiry. See McCarthy v. Azure, 22 F.3d 351, 354–55 (1st Cir. 1994) ("The federal policy presumes proof of a preexisting agreement to arbitrate disputes between the protagonists . . . . Thus, requiring that arbitration rest on a consensual foundation is wholly consistent with federal policy."). The First Circuit has interpreted this inquiry to mean that courts must be wary of forcing arbitration in "situations in which the identity of the parties who have agreed to arbitrate is unclear." InterGen N.V., 344 F.3d at 143 (citing McCarthy, 22 F.3d at 355). In this case, there is no ambiguity regarding the identity of the Agreement's signatories. Co-plaintiff Jusino and several of Matco's agents are signatories to the Agreement, as well as signatories to the additional contracts entered into by the parties. Thus, Plaintiffs are bound by the arbitration clause in the Agreement.

Lastly, the fourth factor assesses whether a party's claim falls within the scope of the arbitration clause. The parties agree that the Agreement's arbitration clause applies to "all breaches, claims, disputes and controversies." (Docket No. 11–2 § 12.1.) Plaintiffs, however, allege that a separate series of contracts, including a security agreement and a credit agreement, to name a few, which do not reference the Agreement's broad arbitration language, govern their claim. Matco insists on the all-encompassing nature of the Agreement, and argues that Plaintiffs' distinction is meritless.

To determine the scope of the arbitration clause, the Court first considers the factual allegations underlying Plaintiffs' claims in the Complaint. See Dialysis Access Ctr., LLC, 638 F.3d at 378; Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth Inc., 473 U.S. 614, 622 n.9, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). Plaintiffs base their claim on Matco's allegedly illegal "chargebacks" and how these negatively affected Plaintiffs' inventory and purchasing power. Matco denies these claims and redirects Plaintiffs' attention to the Agreement to resolve this dispute in arbitration.

Matco's practices during the parties' relationship, though perhaps questionable, say nothing about the arbitration clause itself and whether Matco fraudulently induced Plaintiffs to enter the Agreement. The First Circuit has established that

> where the court is persuaded that 'the parties' *arbitration agreement* was validly formed and that it cover[s] the dispute in question and is legally enforceable,' and that [it] is not otherwise subject to revocation 'upon such grounds exist at law or in equity for the revocation of any contract,' . . . Section 2 of the FAA requires that the court submit the dispute in question to arbitration.

Dialysis Access Ctr., LLC, 638 F.3d at 376 (quoting Granite Rock Co. v. Int'l Broth. of Teamsters, 561 U.S. 287, 300, 130 S.Ct. 2847, 177 L.Ed.2d 567 (2010); 9 U.S.C. § 2) (emphasis in original). Because both parties consented to the arbitration clause and Plaintiffs do not allege wrongdoing in the formation of the contract, there is no reason to nullify or refuse to enforce the arbitration clause's breadth. Id. at 378. The scope of the arbitration clause is therefore as broad as the plain language of the Agreement implies.

In keeping with the federal pro-arbitration policy, "there is a presumption that 'ambiguities as to the scope of the arbitration clause itself [must be] resolved in favor of arbitration.'" Id. at 379 (citing PowerShare, Inc. v. Syntel, Inc., 597 F.3d

22

10, 15 (1st Cir. 2010)). Plaintiffs argue that, if this Court finds the Agreement to govern, Plaintiffs' claim would still fall under one of Section 12.5's exceptions to arbitration, particularly that of "any dispute or controversy involving immediate termination of this Agreement by Matco pursuant to Section 11.4 of this agreement." (Docket No. 11–2 § 12.5.) Unfortunately for Plaintiffs, they were not terminated for any of the reasons listed in Section 11.4 of the Agreement, but rather for "failure to pay to terms amounts owed to Matco." (Docket No. 16–6 ¶ 1.) While Plaintiffs allege that Matco accused Plaintiffs of engaging in conduct noted in Section 11.4(F) ("commits any fraudulent act in connection with any of his/her agreements with Matco"), it is not the reason given for Plaintiffs' immediate termination. (Docket No. 11–2 § 11.4.) Thus, Plaintiffs' immediate termination does not trigger an exception to arbitration under Section 12.5, and their claims must be resolved in arbitration pursuant to the Agreement.

Here, the terms of the arbitration clause are clear and specific. The parties agreed that "all breaches, claims, disputes and controversies" would be "determined exclusively by binding arbitration." (Docket No. 11–2 § 12.1.) Therefore, Plaintiffs' claims fall within the scope of the Agreement's arbitration clause, which must be enforced according to the FAA.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss and Compel Arbitration at Docket No. 11. Plaintiffs' claims against Defendant are hereby **DISMISSED**, as the claims must proceed to arbitration.

**SO ORDERED.**